## HILL v. RAILWAY COMPANY.

1. A railroad company constructed a trestle which crossed a public highway at right angles. Afterwards, the road officials of the county opened a new road under this same trestle, at a different point, without notice to the railroad company, and the new road approached the railroad obliquely and passed under through a narrow opening, with a sharp turn. In driving down this new road, the plaintiff's buggy struck the benches of the trestle, and he was thereby thrown out and severely injured. *Held,* that this injury was not the result of any negligence on the part of the railroad company, and in action to recover damages therefor, the plaintiff was properly non-suited.

2. If the new road was laid out because the defendant had negligently permitted the old road to get into bad condition, the injury received by plaintiff on the new road was too remote a consequence of the company's negligence to sustain this action.

Before Hudson, J., Laurens, February, 1889.

This was an action by B. F. Hill against The Port Royal and Western Carolina Railway Company, commenced March 16, 1888. The opinion states the case.

*Mr. F. P. McGowan,* for appellant.

*Messrs. Jos. Ganahl* and *H. Y. Simpson,* contra.

October 16, 1889.   The opinion of the court was delivered by

Mr. Justice McGowan.   This was an action by the plaintiff against the defendant corporation, claiming damages for personal injury received by the plaintiff by coming in contact with the timbers of defendant's trestle near Badgett's Mill, in Laurens County.

The complaint alleged "that the defendant corporation, in building and maintaining its road bed across the public highway at Badgett's Mill, in Laurens County, so wrongfully and negligently built, and maintains the trestle of its road over and across said highway at said place by reason of the narrowness of the passage, the great obliquity to the public highway, the close proximity of said passage to the steep grade of said highway, and the

want of repair of said crossing, that the said crossing was, and is, extremely dangerous to the travelling public. * * * That in consequence of the defendant's *negligence* in regard to said crossing, the buggy of the plaintiff, in which he was riding along said highway on September 26, 1887, at said crossing, was dashed against the timbers of the defendant's trestle, at the side of the narrow passage of said crossing, without fault of the plaintiff, and was thereby broken and overturned, by means of which the plaintiff received great bodily injuries and a broken leg and other wrongs and injuries, to his damage ten thousand dollars," &c.

The defendant corporation answered, denying that it had been guilty of any negligence in building and maintaining its road bed at the place designated in the complaint, or in failing to make repairs of the crossing at said place, and denying that the passage of said crossing has been made, or is, by any acts of negligence of the defendant, dangerous to the travelling public," &c.

The cause came on for trial before Judge Hudson and a jury. There was much testimony, all printed in the Brief, which, as well as we can summarize it, was, substantially, as follows: The trestle in question was constructed in the year 1884, and at that time, what was spoken of in the testimony as the "old road," the "old route," and the "straight road," was the acknowledged highway. The trestle crossed this highway nearly at right angles, the benches at the crossing being eleven feet apart. This road under the trestle was very bad, rocky, and hard to keep in repair, but it was worked by the county road hands until 1886—two years after the construction of the trestle. In the year named (1886), the overseer of the road, by the authority of the supervisor of roads, and with the consent of Mr. Badgett (who owned a mill on the stream just above the trestle), opened a new public road over Mr. Badgett's land, which left the old road at a point some distance from the trestle on the side towards Laurens.

This new road crossed under the trestle at a different point from that where the old road crossed. It approached the trestle down a hill and at an oblique angle, and crossed under it by an abrupt turn. The public generally used the new road, and the road hands worked it, but it did not appear that the crossing of the old road had been formally closed, or that the new road had

been made at the instance of, or upon notice to, the defendant corporation. On the evening of September 26, 1887, the plaintiff and a companion in a buggy were on their way home, travelling "down the new cut road," and when they were within 65 or 70 yards of the trestle, the mule drawing the buggy got into and continued in a very fast trot down the hill, and in making the sharp turn under the trestle, the buggy was dashed against the timbers of the trestle and was turned over, and the plaintiff's leg was broken, inflicting a very severe personal injury upon him.

Upon the close of the plaintiff's testimony, the defendant corporation moved for a non-suit, which the judge granted, saying, among other things: "So that the plaintiff, in my opinion, has entirely failed to show that the railroad company, by negligence, caused this accident. There is nothing in that point to go to the jury, &c." From this order of non-suit, the plaintiff appealed upon the following grounds:

"I. Because his honor erred in finding that the plaintiff has entirely failed to show that the railroad company caused the accident.

"II. That he erred in finding that there was no evidence whatever that the old road was abandoned because of the benches being only eleven feet apart.

"III. Also in finding that the abandonment of the old road has nothing to do with this particular accident.

"IV. That he erred in considering the question of contributory negligence.

"VI. In finding that it was clear as the noonday sun, that, in this case, this accident occurred from the fact that this mule cantered off or ran off, and that the driver lost control of the mule, and was thrown in that way against the benches.

"VII. That he erred in finding that there is not only no evidence of negligence on the part of the railroad company, but that there is proof positive that the mismanagement of the mule on that occasion, and nothing else, caused this very severe injury to this old gentleman.

"VIII. That he erred in holding that he had the same power to grant a non-suit, as he would have to set aside a verdict for insufficient proof.

"IX. That he erred in not holding that the testimony introduced at the trial tended to sustain the plaintiff's cause of action, and should go to the jury.

"X. Because he erred in not holding that it was the duty of the defendant corporation to restore the highway to its proper width and safety, both at the original crossing and the adopted crossing, and to keep said crossings in good repair, and that if any one suffered injury in consequence of such neglect of duty, the defendant should be held responsible.

"XI. Because he erred in not holding that the defendant had no decree from the county commissioners for constructing this trestle in any particular manner over the benches of the highway near Badgett's Mill, and that the encroachments of the trestle of defendant upon the highway was a nuisance and negligence of defendant *per se.*"

The proof was ample, that the plaintiff received quite a severe injury from his buggy striking with great force against the trestle of the railroad; and the only question is, whether that injury was caused by the negligence of the defendant corporation. A railroad company, which runs its track across a public highway, must not injure the public road, and for the neglect of that duty is responsible for damages caused thereby. *Section 1531, General Statutes* (railroad act), declares that "when a railroad is laid out across a highway or other way, it shall be constructed so as not to obstruct the same."

Was the injury complained of here caused by the neglect of this duty by the railroad company? If the injury had been received at the crossing of the road, which was the highway where the trestle was built, there would have been some questions of fact for the jury, as to whether the company had been guilty of negligence in making the trestle space across the highway too narrow, or in allowing the crossing to get out of repair, &c. The damage, however, was done at a *new crossing*, made, as it seems, after the trestle had been built, and at a place which the company could not have anticipated would afterwards be made the public crossing. When the change in the highway was made without notice to the company, were the company bound to adopt the change—conform to it, and make its trestle at the new crossing

such as the law requires as to "public crossings"—thus having two instead of one crossing ?

Section 1535 of the General Statutes declares that "a highway or tramway may be laid out across a railroad, previously constructed, where the county commissioners adjudge that the public convenience and necessity require the same; and in such case, after due notice to the railroad corporation, and hearing all parties interested, they may lay out a highway across a railroad in such manner as not to injure or obstruct the railroad." It does not appear that the new road in this case was "laid out" in the manner above prescribed, and, so far as the company was concerned, the new crossing was *not* the crossing of a highway, in the sense of the law. "Thus, while it is the duty of railroad companies to restore highway crossings, wherever their roads cross over highways, to a safe condition, and to keep them so, and to make the approaches thereto, yet such is not their duty in reference to crossings of public highways over railroads, *where the public highway is laid out and opened subsequently to the erection of the railroad.*" 1 *Rorer R. R.*, 555.

It is urged, however, that the change here was not really the laying out of "*a new road,*" but only one of those "slight alterations" which may be made by the local authorities, *without notice*, as in the case of *Maddox* v. *Ware*, 2 Bail., 314. As to the public generally, and especially as to the right to make the road hands work it, we can well understand that such a change would not be held to destroy the general identity of the road. But we cannot understand that such a *change*, making a new *crossing* under a railroad trestle, could be considered, as to the railroad company, "merely a slight alteration."

But it is still further urged, that while the company may not have caused the injury to the plaintiff directly, it did so indirectly, by allowing the original crossing to get into bad condition, which was the cause of a new road and new crossing being made, which resulted in the injury to the plaintiff. The injury was not received at the original crossing, and we need not go into the question, whether that crossing was in bad condition from the negligence of the company. If so, there was a way to correct it. But instead of taking this course, in such case directed, the local

authorities took the responsibility of changing the crossing, and in doing so, they made the road down a hill, with an abrupt turn under the narrow space of the trestle at the new crossing ; which circumstances, *combined, caused the injury !* We agree with the Circuit Judge, that, in this view, the consequence was too remote and speculative, and the defendant corporation could not be made responsible. "In civil cases, a defendant is not responsible for results, except such as are natural, proximate, and *direct.* If such consequences are caused by the acts of others, so operating on his acts as to produce the injurious consequences, then he is not liable, &c." *See State* v. *Rankin*, 3 S. C., 438, and authorities ; 2 *Greenl. Evid.*, § 256 ; *Whatley* v. *Murrell*, 1 Strobh., 389 ; *Harrison* v. *Berkley, Ibid.*, 548 ; *Carey* v. *Brooks*, 1 Hill, 365.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.