BOSTON AND ALBANY RAILROAD COMPANY *vs.* CITY OF
CAMBRIDGE.

Middlesex.    January 12, 13, 1893. — June 20, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Laying out Way across Railroad — Damages — Statute.*

The laying out of a highway across an existing railroad is such an appropriation of
individual property to public uses as to require that the owner shall receive a
reasonable compensation therefor ; and, at the trial of a petition for the assess-
ment of damages caused by such a laying out, evidence of the value of the
land taken is rightly admitted, and a ruling that the petitioner is entitled to

recover for the fair value of its land taken, subject to its use for railroad purposes, is correct.

At the trial of a petition by a railroad corporation for the assessment of damages caused by the laying out of a street in a city across the petitioner's railroad, the expenses of making and maintaining in repair the planking, paving, cattleguards, fences, signboards, posts, gates, and gate-house are proper elements of damage; but the cost of operating the gates is not to be included in the verdict.

The U. corporation constructed a railroad in the city of C. under a statute enacted in 1848, which provided that the railroad should not pass at the same level any highway or avenue to the adjoining city of B. In 1853, the city of C. was given, by statute, full power to determine in what manner the railroad should be constructed across the streets within that city, whether at grade or otherwise, and what securities should be provided and maintained by the railroad corporation at such crossings. Upon a petition of the corporation asking the city council of C. to determine the manner of constructing the railroad across the streets in C., and what securities should be provided and maintained by the corporation, the city council, in 1854, permitted the railroad to cross the streets and avenues within the city, upon condition that the corporation should provide, set up, and maintain at its own expense, gates wherever the railroad crossed the streets and avenues leading to B., or streets which should thereafter be laid out within the city of C., and one or more men at each crossing to take charge of the gates and to warn travellers of the approach of trains. In 1866, the W. corporation, under statutory authority, took the railroad properties of the U. corporation, and filed a location of the railroad, which, by the statute, it was authorized to locate, construct, and maintain. In 1869, the W. corporation accepted a conveyance of the U. railroad, including all the franchises, locations, lands, and materials belonging thereto, which purchase was also authorized by the same statute, and which conveyance recited that it was intended not to waive but to confirm the title and rights acquired by the W. corporation by its taking and location above stated. The A. corporation, which was the successor of the W. corporation, under the provisions of a statute enacted in 1867, brought a petition against the city of C. for the assessment of damages caused by the laying out, in 1888, of a street in C. across the petitioner's railroad at a point where its location coincided with the location filed by the U. corporation. *Held*, that, upon the above facts, the petitioner was not precluded from maintaining its petition.

BARKER, J. This petition for the assessment of damages caused by the laying out of Front Street in Cambridge across the petitioner's railroad, on July 20, 1888, under the St. 1882, c. 155, and the St. 1887, c. 282, comes before us upon a report from the Superior Court presenting questions raised by both parties.

1. Considering first the respondent's contention that the laying out of a highway across an existing railroad is not such an appropriation of individual property to public uses as to require that the owner shall receive a reasonable compensation therefor,

the contrary doctrine is well settled in this Commonwealth, and we see no occasion to re-examine at length the grounds upon which it has been placed. *Parker* v. *Boston & Maine Railroad*, 3 Cush. 107, 113. *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 1. *Central Bridge* v. *Lowell*, 4 Gray, 474. *Old Colony & Fall River Railroad* v. *Plymouth*, 14 Gray, 155. *Grand Junction Railroad* v. *County Commissioners*, 14 Gray, 553. *Massachusetts Central Railroad* v. *Boston, Clinton, & Fitchburg Railroad*, 121 Mass. 124. See also *Morris Canal & Banking Co.* v. *State*, 4 Zabr. 62, 70 ; *Philadelphia, Wilmington, & Baltimore Railroad* v. *Philadelphia*, 9 Phila. 563, 567 ; *Northern Central Railway* v. *Mayor, &c. of Baltimore*, 46 Md. 425; *Detroit* v. *Detroit & Howell Plank Road Co.* 43 Mich. 140 ; *Railway Co.* v. *Sharpe*, 38 Ohio St. 150 ; *Chicago & Northwestern Railway* v. *Chicago*, 140 Ill. 309. As said by Judge Cooley, in *Detroit* v. *Detroit & Howell Plank Road Co.*, " It cannot be necessary at this day to enter upon a discussion in denial of the right of the government to take from either individuals or corporations any property which they may rightfully have acquired." Evidence of the value of the land taken was relevant and rightly admitted, and the ruling that the petitioner was entitled to recover for the fair value of its land taken, subject to its use for railroad purposes, was correct.

2. The other elements of damages allowed in the verdict may be classed together as the expense of making and maintaining in repair the appliances and structures designed to make the crossing safe and convenient for the traffic of the railroad and of the highway. It is the duty of the petitioner, under the statutes and the order of the Board of Railroad Commissioners, to make and keep in repair the planking, paving, cattle-guards, fences, signboards and posts, and the gates ; and there was also evidence tending to show that the gate-house and fences were necessary in fact. Aside from the gates and the gate-house, the expenses of making and maintaining all these structures and appliances were held in *Old Colony & Fall River Railroad* v. *Plymouth*, 14 Gray, 155, to be proper elements of damage ; and the expenses of erecting and maintaining the gates, and of the gate-house, if it was a necessary structure, are within the reason of that decision, and also of the rule given in the *Massa-*

chusetts *Central Railroad* v. *Boston, Clinton, & Fitchburg Railroad,* 121 Mass. 124, that a railroad corporation across whose road a highway is laid has the right " to recover damages for the injury occasioned to its title ·or right in the land occupied by its road, taking into consideration any fences or structure upon the land, or changes in its surface, absolutely required by law, or in fact necessary to be made by the corporation injured, in order to accommodate its own land to the new condition." This requires us to allow in favor of the petitioner all the elements included in the verdict, unless we decline to follow those decisions. In discussing that question we assume that all these expenses belong to the· class which the Legislature has the right to impose, without consideration, either upon the railroad company, or upon the instrumentalities charged with building and repairing highways; and this irrespective of any reserved right to amend corporate charters, or to control mere agencies of the government. *Thorpe* v. *Rutland & Burlington Railroad,* 27 Vt. 140. *Munn* v. *Illinois,* 94 U. S. 113. *Beer Co.* v. *Massachusetts,* 97 U. S. 25. *Stone* v. *Mississippi,* 101 U. S. 814. *Butchers' Union Co.* v. *Crescent City Co.* 111 U. S. 746. *Veazie* v. *Mayo,* 45 Maine, 560. *Portland & Rochester Railroad* v. *Deering,* 78 Maine, 61. *Boston & Maine Railroad* v. *County Commissioners,* 79 Maine, 386. How such burdens shall be distributed is a question of practical economics within the province of legislation. Such expenses· imposed upon railroad corporations, if charged to operating expenses, are defrayed in payments of fares and freights by those who use the railroad; while if imposed upon municipalities they are paid out of the taxes. Which course places the burden where it ought to rest is fairly a legislative question.

The fact that the safety of railroad traffic requires that the railroad company only shall be allowed to do work within the lines of its location has constantly tended to induce legislatures to impose upon railroad companies the duty of maintaining the roadway and all structures and appliances necessary for safety and convenience at such crossings; and in some States the courts have refused to allow the cost of making or maintaining such structures as elements of damages to be recovered by railroad corporations for the crossings of railroads by highways.

In Maine, if a new way is laid across an existing railroad at grade, the statute directs that the expense of building and maintaining so much of the way as is within the limits of the railroad shall be borne by the· railroad company. Rev. Sts. of Maine, 1883, c 18, § 27. St. 1878, c. 43, § 1. St. 1883, c. 167, § 2. But at common law the crossing of a new way with one already in use must be made with the least possible injury to the old way, and whatever structures are necessary must be erected and maintained at the expense of the party making the new way, and if the old way cannot be crossed without damage, the damage must be ascertained and paid. *Perley* v. *Chandler*, 6 Mass. 454. *Richardson* v. *Bigelow*, 15 Gray, 154. *Lowell* v. *Proprietors of Locks & Canals*, 104 Mass. 18, 22. *King* v. *Kent*, 13 East, 220. *King* v. *Lindsey*, 14 East, 317, 322. *King* v. *Kerrison*, 3 M. & S. 526, 532. *Morris Canal & Banking Co.* v. *State*, 4 Zabr. 62. *Northern Central Railway* v. *Mayor, &c. of Baltimore*, 46 Md. 425.

A brief historical statement will show that the cases which we are asked to reconsider are, so far as they support the verdict rendered in the present cause, not only consonant with the principles of the common law, but that they are in accord with and give a practical operation to the expressed will of the Legislature. The earlier railroad charters of this Commonwealth required railroad companies to construct and maintain the crossings of existing ways, canals, and navigable waters, and were silent as to the laying out of new ways across railroads. See Sts. 1825, c. 183 ; 1829, cc. 26, 93, 94 ; 1830, c. 4 ; 1831, cc. 27, 55, 56, 57, 72 ; 1832, cc. 49, 97 ; 1833, cc. 109, 116, 118 ; 1835, c. 111. All but the first two contained a provision since made part of the general laws, that the Commonwealth might purchase the road upon a ten per cent basis ; (see Rev. Sts. c. 39, § 84 ; Gen. Sts. c. 63, § 138 ; St. 1874, c. 372, § 180 ; Pub. Sts. c. 112, § 7 ;) and the presence of this provision implies that the Legislature will discriminate with some care in imposing upon the corporations burdens which may diminish the value of the reserved rights of the Commonwealth. In the general acts defining the rights and duties of railroad corporations, passed before the adoption of the Revised Statutes, (St. 1833, c. 187, St. 1834, c. 137, and St. 1835, c. 148,) the cost of alterations of

existing ways to facilitate their crossing at different levels or otherwise, was imposed upon the railroad corporations, (St. 1833, c. 187, §§ 5, 6,) and it was made their duty to ring the bell and to place and maintain signboards at each crossing, and, if necessary for the security of the public, to erect gates across the railroad with an agent to open and close them. St. 1835, c. 148, §§ 4, 6. These provisions were substantially re-enacted in the Rev. Sts. c. 39, with a new provision, (Rev. Sts. c. 39, § 69,) that, if after the making of a railroad, a new way should be laid across it, the way should in all cases be so made as not to obstruct or injure the railroad. The St. 1842, c. 22, gave county commissioners power to require railroad companies, at their own expense, to separate the grades at any crossing. The St. 1846, c. 271, forbade the construction of crossings at grade unless by authority of the county commissioners, in which cases they were to prescribe the manner of constructing the crossing, and might order gates and an agent to operate them. This statute also imposed upon railroad companies the duty of erecting and maintaining fences and cattle-guards. The St. 1849, c. 222, extended the provisions requiring signboards, and providing for the ordering of gates at all grade crossings of any way or travelled place, and allowed county commissioners to direct the gates to be built across the way instead of across the railroad, and also gave them original jurisdiction of all questions touching obstructions to ways by the construction or operation of railroads.

This was the state of the statute law when the rights of the parties to the earlier of the two petitions which were before the court in the case of the *Old Colony & Fall River Railroad* v. *Plymouth*, 14 Gray, 155, were fixed by the laying out of a highway across the railroad in January, 1852, the petition for damage having been filed on June 30, 1852. The other highway, for the laying out of which damages were claimed in that case, was laid on December 17, 1855, and before that date two additional general laws had been enacted. The St. 1854, c. 401, authorized county commissioners, upon the petition of any party, for the better security of life or convenience of travel, to alter the location and construction of gates at railroad crossings; and St. 1855, c. 350, required railroad companies, before con-

structing any crossing, to obtain a decree of the county commissioners prescribing the alterations to be made, and to give security for the performance of the decree, and also empowered the commissioners to decree alterations and repairs to be made by the railroad company at its own expense at any crossing, and gave cities and towns the right to recover all damages, charges, and expenses incurred by reason of the neglect or refusal of a railroad company to erect or keep in repair structures ordered or necessary at a crossing.   While both of the petitions referred to were pending, and before the hearing in this court, St. 1856, c. 245, authorized the stationing of flagmen at crossings, and St. 1857, c. 287, dealing explicitly with the subject of laying turnpike and other ways across existing railroads, was also enacted.   This statute provided that no such way should be laid across a railroad, except by the county commissioners or by their permission, and upon notice to the railroad company, and that " all the expenses arising from and incident to the construction and maintenance of the way across said railroad " should, " in all cases, be borne by the county, city, town, or corporation whose duty it is to build and maintain such way." § 4. By the same statute, § 6, if the way crossed the railroad on a. level therewith, the railroad corporation was required at its own expense so to guard or protect the rails as to secure a safe and easy passage across the railroad, and if a subsequent alteration of the way or additional safeguards were required at the crossing, the commissioners could order the railroad company to establish them.   The cases reported in 14 Gray, 155, were argued in January, 1859, and the decision was announced in the following December, just before the final enactment of the General Statutes.   But the report of the revising commissioners containing in c. 63, § 57, the provision that " all expenses of and incident to constructing and maintaining the road or way at such crossing shall be borne by the county, city, town, or corporation owning the same," was submitted on December 15, 1858.   This provision has from the time of its enactment in 1857 been in substance a part of the general statute law, being found in Gen. Sts. c. 63, § 57, and incorporated in the " General Railroad Act " of 1874, as a part of § 95 of St. 1874, c. 372, and re-enacted in Pub. Sts. c. 112, § 128.  In the

mean time the case of the *Massachusetts Central Railroad* v. *Boston, Clinton, & Fitchburg Railroad*, 121 Mass. 124, decided in October, 1876, had shown that this court adhered to the doctrine promulgated in 1859, and the Legislature has not only given no sign of any intention to change the rules thus laid down, but has again re-enacted in the Public Statutes the provision that, when a way is laid across an existing railroad, " all expenses of and incident to constructing and maintaining the way at such crossing shall be borne by the county, city," or town. The opinion of the court in the cases reported in 14 Gray, 155, does not refer to this statute provision, which did not control those cases, because it was enacted after the rights there adjudicated had become fixed. The decision referred to rests upon the common law doctrines above stated; and not only is it in harmony with the statute so often re-enacted and yet in force, but the application of its doctrine by the courts is the only way in which the statute is given practical operation. It is only by allowing the expense of erecting and maintaining the appliances and structures necessary and required at the new crossing to be taken into account in the assessment of the damages done to the railroad company by the laying out of the way, that the statute which says that those expenses are to be borne by the county, city, or town, is given practical effect. For us, under such circumstances, to overrule the decisions referred to, would be to go contrary to the repeatedly expressed will of the Legislature in a matter peculiarly subject to its control.

3. The petitioner contends that it is also entitled to have the cost of the operation of the gates, a reasonable compensation for which was found by the jury to be the sum of $14,375, included in its damages, and added to the verdict. In one sense the cost of operating the gates, like that of ringing the bell for the crossing, or of keeping a flagman to give notice of the approach of trains, is an expense arising from and incident to maintaining the way across the railroad; and it might perhaps, without much strain, under the principles of the common law, and under the language of St. 1857, c. 287, and of its re-enactments, be considered as a fair element of damages. So also might the increased expense of ringing the bell, which was held not to be

an element of damages in both of the former decisions; and so might the expense of maintaining a flagman, which was held inadmissible in the later of them, both because the order to maintain the flagman might be changed, and because it was made since the time of the location, by relation to which the damages must be assessed.   But all these things are in a fair sense part of the operation of the railroad, and are more properly chargeable to ordinary operating expenses than is the cost of erecting and keeping in repair the permanent structures and appliances at the crossing.   They may well be classed with the inconveniences occasioned to the business of the railroad by the use of the crossing, which were held not to be proper elements of damages in *Massachusetts Central Railroad* v. *Boston, Clinton, & Fitchburg Railroad.*   Upon the whole, we are not inclined to add this element of the cost of operation to the elements of the cost of construction and maintenance, and we hold that the cost of operating the gates is not an element in the damages to be assessed.

4. At the place where Front Street now crosses the petitioner's railroad, a railroad was first located and constructed by the Union Railroad Company, chartered by St. 1848, c. 296. By the second section of this charter it was provided that the railroad should not pass at the same level any highway or avenue to Boston.   But by St. 1853, c. 151, § 1, the city council of the city of Cambridge was given full power to determine in what manner that railroad should be constructed across the streets within the city of Cambridge, whether at grade or otherwise, and what securities should be provided and maintained by the railroad company at such crossings.   There was evidence tending to show that, upon a petition of the directors of the Union Railroad Company asking the city council of Cambridge to determine the manner of constructing the railroad across the streets in Cambridge, and what securities should be provided and maintained by the railroad company, agreeably to St. 1853, c. 151, the city council, in the year 1854, permitted the railroad to cross the streets and avenues within the city upon condition that the company should provide, set up, and maintain at its own expense, gates wherever the railroad crossed the streets and avenues

leading to Boston, or streets which should thereafter-be laid out within the city of Cambridge, and one or more men at each crossing, to take charge of the gates and to warn travellers of the approach of trains. By St. 1866, c. 278, the Boston and Worcester Railroad corporation was authorized to purchase, among other railroad properties, the railroad, property rights, and franchises of the Union Railroad Company, and, in default of such purchase within three months from May 28, 1866, to take, with other property, the Union Railroad, with all the franchises, locations, lands, and material thereto belonging and appertaining, and to locate, construct, and maintain thereon a railroad, the termini and courses of which were specified in the statute. The purchase was not made, and on November 22, 1866, the Boston and Worcester Railroad Corporation exercised its power to take the Union Railroad, and filed a location of the railroad, which by the statute it was authorized to locate, construct, and maintain, and which is the railroad across which Front Street was laid by the respondent. At the point where Front Street crosses this railroad its location coincides with the location filed by the Union Railroad Company. After the taking and the filing of the location by the Boston and Worcester Railroad corporation, in 1866, that company accepted a conveyance, dated on May 19, 1869, of the Union Railroad, including all the franchises, locations, lands, and material thereto belonging and appertaining, which conveyance recited that it was intended not to waive, but to confirm, the title and rights acquired by the Boston and Worcester Railroad corporation by its taking and location above stated. The petitioner is the successor of the Boston and Worcester Railroad corporation, under the provisions of St. 1867, c. 270.

The respondent contends that these circumstances preclude the petitioner from recovering damages for the laying out of Front Street across its railroad. In deciding this question we do not find it necessary to determine the effect of the new location, made under St. 1866, c. 278. In our opinion the whole office of St. 1853, c. 151, § 1, was to rescind the prohibition of St. 1848, c. 296, § 2, against grade crossings, and to give to the city council the power, theretofore in the county commissioners

under general laws, to fix the details of the crossings, and to determine what securities should be provided and maintained by the railroad company. We see no reason to believe that it was intended, in case new streets should be laid out across the railroad, to provide that the damages to be awarded to the railroad company should be assessed otherwise than by the settled general rule, or to abrogate as to these crossings the general statute, which ordained that in such cases all expenses of and incident to constructing and maintaining the way at such crossings should be borne by the city.

In the view we have taken of the case, the other questions raised are immaterial, as upon the grounds stated the verdict was justified, and by the terms of the report it is to stand.

*Judgment on the verdict.*

*Samuel Hoar*, for the petitioner.
*C. J. McIntire*, for the respondent.