# John E. Nalley *v.* The Pennsylvania Railroad Company, Appellant.

[Marked to be reported.]

*Ways—Grant of right of way—Lateral railroad—Damages.*

Where the owner of land grants to another a right of way thirty feet wide, and subsequently recovers damages for a twenty feet space allowed within the limits of the right of way for the construction of a lateral railroad, his subsequent grantees of other land described as abutting upon the right of way cannot recover damages for the construction of a second track of the lateral railroad within the limits of the original twenty feet; and in a suit to recover such damages it is error for the court to submit to the jury the question whether or not the right of way was a public street by dedication, without at the same time limiting the definition of such public street by the qualifying effects of the prior grant of the right of way and the construction of the lateral railroad.

Argued Feb. 4, 1895. Reargued Feb. 4, 1896. Appeal, No. 315, Jan. T., 1894, by defendant, from judgment of C. P. Montgomery Co., June T., 1893, No. 7, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Trespass for damages for laying a second track of a lateral railroad. Before SWARTZ, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial the defendant presented, among others, the following points :

1. The uncontradicted testimony being that Robert T. Potts, by deed dated April 3, 1849 (which deed is prior to plaintiff's title), granted to Griffith Jones and Thomas I. Potts the property known as the Furnace property, together with, inter alia, " a right of way " from the said lot " to the back road " (now called Flint Hill road) " on a downward course so as to make the easiest and best slope to raise the hill," said " right of way to be thirty feet in width " and which said right of way is Centre street, so called, he was precluded from granting to the land bounding said right of way any rights therein whatever. The plaintiff is not entitled to recover and the verdict must be for the defendant. *Answer :* This is a request to instruct you to find for the defendant. I cannot so instruct you. I may add that the uncontradicted testimony does not show that the right of way spoken of is Centre street. The point is refused. [1]

2. When Robert T. Potts, the original grantor conveyed to plaintiff's predecessor in title the lot of land situated on the southeast side of the thirty feet wide street, called Centre street, it was simply descriptive of the land and not in itself a dedication of the street to public use. At most it was an implied covenant that Robert T. Potts would lay out a street for the accommodation of his grantee. *Answer :* This is true, but the conveyance to the side of Centre street is evidence to be considered by the jury in connection with the other facts and circumstances of the case, in determining whether Centre street is a public street by dedication. [2]

3. The said Robert T. Potts having conveyed to plaintiff's predecessor in the title a lot of land situated on the southeast side of what was called in the conveyance Centre street made no dedication of the street to the public ; he only covenanted with his grantee that there was or should be such street; and if he has failed to make such street, the defendant cannot be held liable for the breach of such covenant by the said Potts, and the verdict must be for the defendant.

4. Robert T. Potts having sold and granted to Griffith Jones and Thomas I. Potts in 1849 the said right of way from the Furnace property to the Flint Hill road was estopped from grant-

ing a street on the same ground used for said right of way, and the verdict must be for the defendant.

5. There being no evidence showing an abandonment of the said right of way granted to said Jones and Potts, the plaintiff can acquire no prescriptive right therein by user, and the verdict must be for the defendant. *Answer :* These points are each refused. They request an instruction to find for the defendant. I cannot so instruct you. [3]

6. The testimony being that Centre street is not a township road; has never been kept in repair for travel by the supervisors of the township; has never been accepted as a public road by the township; and the testimony also being that the street was used by the plaintiff for ingress and egress to his property only, then if any way is shown, it is only his own private right of way for the disturbance of which the defendant is not liable in this action, and the verdict must be for the defendant. *Answer :* This is refused, but it is true, as I have already instructed you, that your verdict must be for the defendant if you find the plaintiff has shown no more than a private right of way. [4]

7. The public cannot acquire an easement by prescription. A prescription supposes a grant, and in the case of the public there can be no grantee. The doctrine is inapplicable to the public. *Answer :* This point is not material to issue, because the plaintiff does not claim that Centre street is a public street by prescription. The plaintiff claims that the deed to the side of the street, with the other evidence in the case, shows a dedication to public use by the owner of the ground occupied by Centre street. If, however, the defendant by this point requests us to charge that a public street may not be established by adverse user, we cannot affirm the proposition. [5]

10. Under all the evidence the verdict must be for the defendant. *Answer :* This is refused. I cannot so instruct you. [6]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*C. Henry Stinson* and *William F. Solly*, with them *Charles H. Stinson*, for appellant.—Having granted this right of way

Potts was precluded from granting other and distinct rights to his grantees of abutting land. The grantee must have known when he took the deed that Centre street was not a public highway, but was a private way for the furnace property, and he must have seen a lateral railroad there in use.

Dedication has been defined as an appropriation of land to some public use made by the owner of the fee, and accepted for such use by or on behalf of the public : Angell on Highways, 3d ed. chap. 3, sec. 132; 5 Am. & Eng. Ency. of Law, 400 ; Dillon on Mun. Corp. sec. 505; Com. v. Kline, 162 Pa. 499; 5 Am. & Eng. Ency. of Law, 415 ; Beatty's Alley, 104 Pa. 622.

A street which has not been actually opened for travel and which is not fairly practicable for travel is not a public highway : Phillips v. St. Clair Incline Plane Co., 153 Pa. 230.

The public cannot acquire an easement by prescription ; the doctrine is inapplicable to the public. A prescription supposes a grant, and in the case of the public there can be no grantee : Curtis v. Keesler, 14 Barb. (N. Y.) 511; Pearsall v. Post, 20 Wend. (N. Y.) 121; Warren v. Jackson, 15 Ill. 236 ; Com. v. Low, 3 Pick. (Mass.) 408.

The owner of the property at the time of the assessment of damages for the lateral railroad is bound to submit his whole claim to the jury ; and if he neglects to so submit any part of the injury likely to be suffered he will be taken to have waived such part: Pusey v. Allegheny, 98 Pa. 522; 3 Sutherland on Damages [2d ed.], 2328 ; Pierce on Railroads, 213 ; Mills on Eminent Domain, 263 ; Wood on Railroads, 1032.

*N. H. Larzelere,* with him *M. M. Gibson,* for appellee.—The law does not deprive Robert T. Potts of his right to grant other rights upon the same right of way, assuming this to have been its location. So long as he does not interfere with the passage of the furnace people, in the manner contemplated by their grant, he could do anything with his own land, and grant any rights therein to others : Low v. Streeter, 9 Lawyers' Rep. Annotated, 272; Jamaica Pond Aqueduct Corporation v. Chandler, 9 Allen, 159; Richardson v. Palmer, 38 N. H. 212; Welch v. Wilcox, 101 Mass. 162; Goddard on Easements, 4 ; Louisville, etc. Ry. v. Koelle, 104 Ill. 455.

There is no incompatibility in the grant of a right to several

persons, and which confers a right appurtenant as to some of the grantees and in gross as to others. Such a grant may be in part appurtenant and partly in gross : Atkins v. Bordman, 37 Am. Dec. 100; Bakeman v. Talbot, 88 Am. Dec. 275; Bean v. Coleman, 44 N. H. 539; Maxwell v. McAtee, 48 Am. Dec. 409; Underwood v. Carney, 1 Cush. 292; O'Linda v. Lothrop, 21 Pick. 292 ; MacTavish v. Carroll, 61 Am. Dec. 353 ; Morrison v. Marquehardt, 92 Am. Dec. 444; Moffitt v. Lytle, 165 Pa. 173; Ehret v. Gunn, 166 Pa. 384; Wilkinson v. Supplee, 166 Pa. 315; Haas v. Bergin, 167 Pa. 408.

We earnestly contend that the powers granted to a lateral railroad are limited by the act of assembly to the place specified, and its uses are limited to the purposes designated. The uncontradicted testimony showing that this lateral railroad had been torn up beyond the Flint Hill road, and that the quarries of appellant had been abandoned for over twenty years, and that the small section of road remaining on this street had ceased to be used as a lateral railroad, and was used merely as a siding by the Reading Railroad Company, no further rights under said charter could be exercised.

OPINION BY MR. JUSTICE GREEN, October 6, 1896 :

Both parties to this contention claim title from a common grantor, Robert T. Potts. The deed from Robert T. Potts and wife to Thomas J. Potts and Griffith Jones, defendant's predecessors in the title, was made April 3, 1849, and was recorded the same day. The land conveyed was a tract of twelve acres and thirteen perches, and the deed also granted a right of way which is thus described in the deed, " And a right of way from the said lot to the back road on a downward course so as to make the easiest and best slope to the rise of the hill; said right of way to be thirty feet in width." The next conveyance in the line of the defendant's title was a deed made by Thomas J. Potts & Wife and Griffith Jones to the Swede Iron Co., and dated August 26, 1852, and recorded September 13, 1852, and it conveyed the same premises and the same right of way mentioned in the preceding deed. This title was regularly passed to Richard Heckscher & Sons, the present owners, so that they are in position, and the defendant acting by their authority, to claim and exercise whatever rights were held under the original

deed from Robert T. Potts to Thomas J. Potts and Griffith
Jones in April, 1849. In addition to this, The Swede Iron
Company, which was incorporated by act of assembly dated
April 15, 1851, P. L. 721, under proper proceedings in the court
of common pleas of Montgomery county, at August term, 1852,
located and constructed a lateral railroad, under the general law
of 1832, to extend from their furnace property, being the tract
of twelve acres and thirteen perches of land above mentioned,
to their mines. This railroad extended on lands of the Swede
Iron Company and lands of Robert T. Potts, " partly on a thirty
feet street on the same," by courses and distances mentioned in
the petition.

So that at that date, 1852, an open space thirty feet in width,
and called a street, was already in existence and presumably in
use, leading from the twelve acre tract to the mines of the com-
pany.

On the trial a witness named Daniel Kinsey testified as fol-
lows : " Q. You told us you lived in Upper Merion and have
been a surveyor for a good many years. Do you know this
property and this thirty feet right of way ? A. I know the prop-
erty, yes. I know the right of way spoken of here ; what is
called Centre street. I know where the track lays. I have
known it ever since it has been there. It has probably been
there thirty years, from 1850 or thereabouts. The first I took
notice of it the track was there. I knew it before it was there.
Q. Did you know it when Griffith Jones bought the property
from Potts ? A. I remember very well when he bought it. I
don't just remember about that right of way being there.
Q. Have you had occasion to examine the street where it was
located ? A. I measured all around it different times. So far
as I know this right of way is in the same place as it was when
I first knew it. I measured both sides of it. I was supervisor
of the township once. I never knew of the public taking
charge of this road as a public road while I was in office. The
thirty feet stopped abruptly at the furnace property now owned
I believe by the Heckshers. What is now called Flint road was
formerly called the back road ; it is called the back road some-
times now and sometimes the Flint road."

David Mulholland, a witness for the plaintiff, testified that
he knew the property for many years, that he moved into the

Nalley house in 1857, and lived there twenty-four years. He said, " Centre street was always thirty feet wide. . . . This track was on this thirty feet wide street. I call Centre street thirty feet wide. The railroad track was on that street. That street was thirty feet wide in front of the Nalley property. It ran from the Flint Hill road to the Swede Iron Company's property and there terminated, but it was used always as a road of the company's ground but it was not a street."

There was an abundance of other testimony showing that the space called Centre street was always of the width of thirty feet, that it was not a public street but a short passageway leading from the Flint road back to the furnace property where it stopped, that the township authorities had never worked, or exercised any authority over it, that it was used both by the owners of the furnace property and by the . occupants of the houses bordering upon it for all their private purposes, and that it was at no time of any other width than thirty feet. The width of the way or street which the lateral railroad might occupy was twenty feet, and it not only does not appear in the testimony that this width of twenty feet was exceeded, but there was affirmative and uncontradicted testimony that the whole space between the outside rails of the two tracks as they were after the new track now complained of was built, was but seventeen feet. George Shafer, a civil engineer, testified to actual measurements made by him to this effect.

Recurring now to the title of the plaintiff we find that it originated in a deed from Robert T. Potts to Patrick Flynn, dated April 1, 1853, recorded October 4, 1853. After various intermediate conveyances this title came to the plaintiff in 1891 by a sheriff's deed upon a sale under a mortgage. At the time that Patrick Flynn purchased, in 1853, the space called Centre street was opened and in use with a lateral railroad built upon it. He therefore knew at that time what its character was and was bound by all the consequences of such knowledge. In his deed Centre street is named as an adjoiner on one side, and other deeds were also given in evidence, made to other parties in which also Centre street was named as an adjoiner.

There is no doubt that as between Robert T. Potts and Patrick Flynn and his successors in the title, and all others who received similar conveyances of lots bordering on Centre street,

a dedication of the street was accomplished for the common use of all. It is also true that Robert T. Potts became subject to a personal covenant that such a street should be there according to the provisions of the deeds. But another question arises here, to wit, how far does the prior grant of a right of way to another person over the same ground covered by the street, affect or restrain the rights of the owners of the lots abutting on the street? Is not the prior grantee of the right of way entitled to the exercise of every use of the right of way which he would or could have enjoyed under his grant, without reference to any subsequent grants to others of rights to use the same way? Or to be still more precise, in order to meet the exact question raised on this record, when the first grantee obtained a right to build a lateral railroad over a portion of the width of the same right of way, and extending through its length, and pays damages to the then owner of the adjoining property assessed in proper legal proceedings, as the price of the privilege, may he not lay a second track within the limits of the space allowed for his railroad without being again liable to a proceeding for damages occasioned by the laying of the second track? It seems to us this is the very precise question raised on this record and which requires solution.

There are some things contained in the charge and answers to points, by the learned court below, to which we are unable to agree. The objectionable matters in the charge and answers are these. The learned judge did present this subject in his charge on the question of damages very fully and clearly, but in doing so he said, speaking of the plaintiff's right, " What was the right? It is said that there was the right of way granted by Robert Potts to Potts and Jones in 1849, and that this right of way extended over the thirty feet street or way called Centre street. I charge you that there is no evidence here to show where Potts and Jones, the original owners of this furnace property, located their right of way that was secured to them by the deed." In this we think there was error. The witness Daniel Kinsey testified that he knew the property when it was bought by Jones and that he knew the right of way, " what is called Centre street," to use his own expression, and said also, " So far as I know this right of way is in the same place as it was when I first knew it. I measured both sides of it." Then

it is undoubted under all the evidence that there was never any other space than this that was used by the furnace owners at this place. In the deed it is described as thirty feet in width which is precisely the width of the space called Centre street, and it did extend, "from the said lot to the back road on a downward course," as described in the deed. Moreover it was always used by the owners of the furnace lot from the beginning, and as early as 1852 they caused the lateral railroad to be built upon it. There are other facts tending strongly in the same direction, and to our minds, all of this testimony is highly persuasive, and indeed convincing, to prove that this very space of ground subsequently called Centre street was the very right of way which Potts and Jones opened and used as the right of way granted to them by their deed from Robert T. Potts. The same idea is repeated by the learned court in the answer to the first point when it is said, "I may add that the uncontradicted testimony does not show that the right of way spoken of is Centre street." We have not been able to discover any evidence in contradiction of the proposition that the right of way was Centre street, and we think the answer was erroneous in this respect.

In the answer of the court to the second point, and in the charge, it was left to the jury to say whether the space called Centre street, became a public street by dedication on the part of Robert T. Potts on account of the descriptions of the lots sold, including the plaintiff's, as bordering on Centre street. No qualification was made in this part of the charge, in the proposition that the jury might find it to be a public street in the ordinary sense of that term. But whatever might be the intent of Robert T. Potts in this regard, or whatever might be the effect of his conveyances as between himself and his grantees, it is very certain that he could not give them a free public street in the unqualified meaning of that expression, because he did not have it to give. His conveyances were necessarily subject to the operation of his prior grant of the right of way to Potts and Jones, and to the appropriation of twenty feet in width of the street space, for the building of the lateral railroad. Robert T. Potts had received the damages for this appropriation before any of these conveyances were made, and it cannot be tolerated that his subsequent grantees can recover either any part of the

damages for the original erection, or for any subsequent erection within the twenty feet space, for which Robert T. Potts could not have recovered. That consideration raises a question which we will presently indicate. For the present purpose it is enough to say that we think it was error to submit the question whether this was a public street by dedication, without at the same time limiting the definition of such public street by the qualifying effects of the prior grant of the right of way, and the construction of the lateral railroad.

Now it is true that when the learned judge charged the jury upon the question of damages he did very carefully and fully set out this distinction. He told the jury that they could not assess the damages, " as if the plaintiff had a free open right over the full length of this street, unobstructed by anything because that was not the case." But he nevertheless did assume and so charged the jury, that they might allow damages for the erection of the additional track, and simply left it to them to say as a matter of fact what those damages should be. This was giving to the jury the whole question of the right to have any damages. But that was a question which the court alone should decide. True, the court did virtually decide it by assuming it in favor of the plaintiff, and simply directing a verdict on the fact of the damages, but that was not a distinct presentment of the question as a legal question, and then ruling upon it.

The learned court below did distinctly charge the jury as follows : " If this is Heckscher's road and the Pennsylvania Railroad Company were simply employed to do the work, then the Pennsylvania Railroad Company is not responsible; " and again, " Therefore unless you find that this was the railroad siding or track of the Pennsylvania Railroad, there is no evidence here upon which the plaintiff can recover. I repeat that unless you find that this railroad put there is the railroad of the Pennsylvania Railroad Company, the defendant in this case, if this siding or tracks is the work of the Pennsylvania Railroad for Heckscher and not for themselves then the plaintiff cannot recover."

We are of opinion that there can be no recovery in this case, first, because the tracks laid are within the twenty feet space allowed for the lateral railroad, and as the damages for build-

ing that railroad were assessed and paid to the former owner while he held the title and before any conveyance was made to the plaintiff's predecessor in the title, there cannot be a second recovery for the mere shifting of the tracks or laying new tracks within the width of the space allowed for the road, and, second, because the defendant company was acting merely for Heckscher & Co. in the work that they did in shifting the tracks, and there is no evidence on the record showing that Heckscher & Co.'s ownership of the road was divested because of that work. The Pennsylvania Railroad Company makes no claim to the ownership of the road, and there is no evidence in the case that they ever became the owners of it. It was error therefore to leave that question to the jury.

After the conveyance of the right of way by Robert T. Potts to Potts & Jones in 1849, he could make no conveyance to other persons that would confer rights inconsistent therewith. And after the lateral railroad was built on the right of way, it was not possible to make any kind of a grant, which would be inconsistent with the right of the owners of that railroad or their successors in the title thereto. The plaintiff took his title fully subject to these rights and in subserviency thereto. As a matter of course no public highway in the literal sense of that term, could ever be made of this right of way in hostility to its owners. It may well be conceded that Centre street might be described as an adjoiner in subsequent deeds for lots bordering on it, and if any use of the street was made by such subsequent grantees of lots, which was not in hostility with the prior right granted to Potts & Jones, or with the rights of the lateral railroad owners, such user would not be disturbed. But that consideration does not dispose of this case. The present claim of the plaintiff is in entire hostility with the right of the owners of the railroad and therefore cannot be sustained.

The judgment is reversed.