(120 So. 159)

## GULF, M. & N. R. CO. v. PISTOLE.
### (I Div. 449.)

Supreme Court of Alabama. Oct. 18, 1928.

Rehearing Denied Feb. 2, 1929.

---

[1] Ante, p. 674.

. J. G. Hamilton, of Mobile, for appellant.

Outlaw, Kilborn & Smith, of Mobile, for appellee.

GARDNER, J. Mrs. Pistole, appellee here, was a passenger in a touring car driven by her brother-in-law, one Curd, on the night of December 21, 1924, when the car upturned in

a ditch, with the result that her collar bone was broken and other injuries sustained, not necessary here to detail. The ditch, which was about 10 feet wide and 6 feet in depth, was on the right of way of the Gulf, Mobile & Northern Railroad Company, a few hundred feet beyond the city limits of Mobile, and was spanned by a bridge some 18 feet in width, also on said right of way. Her suit against said railway company is based upon the theory that the place of the injury was a public road crossing and that the accident occurred by reason of the negligent failure of the railroad to maintain such crossing in a reasonably safe condition. There was verdict and judgment for the plaintiff, from which defendant prosecutes this appeal.

The following from Patterson v. S. & N. R. R. Co., 89 Ala. 318, 7 So. 437, quoted approvingly in Southern Ry. Co. v. Flynt, 203 Ala. 65, 82 So. 25, is here pertinent:

"If a railroad company constructs its road across a public road, or highway, the duty devolves upon it to put and keep the approaches and crossing in proper repair for the use of the traveling public. This duty will be sufficiently discharged if the highway is maintained in a reasonably safe and convenient condition, so as not to materially impair its usefulness, or interfere with its safe enjoyment by travelers, who exercise ordinary care and prudence for their own safety in using it."

Our decisions are to the further effect that the duty on the railroad, as above outlined, is a continuous one. So. Ry. Co. v. Morris, 143 Ala. 628, 42 So. 17; So. Ry. Co. v. Taylor, 148 Ala. 54, 42 So. 625; So. Ry. Co. v. Posey, 124 Ala. 486, 26 So. 914; N. C. & St. L. Ry. Co. v. Ragan, 167 Ala. 277, 52 So. 522.

Each count of the complaint upon which the cause was tried disclosed that the accident occurred on defendant's right of way, at a public road or highway crossing thereon, and that the accident was the proximate result of a breach of defendant's duty to maintain said crossing or approaches thereto in a condition reasonably safe and convenient for use by those traveling said highway. The demurrer to these counts was properly overruled. Authorities, supra; Gulf, Mobile & Northern R. Co. v. Havard, 217 Ala. 639, 117 So. 223.

The defendant's special pleas, to which demurrers were sustained, attempted to exempt defendant from liability upon the theory that the bridge referred to in the several counts of the complaint, was built and maintained by another or others than itself. In So. Ry. Co. v. Morris (Sup.) 42 So. 19, speaking to this question, the court said:

"If the defendant was maintaining and using the railroad, it was its duty to keep the approaches in repair, whether constructed by it or not."

To like effect is So. Ry. Co. v. Taylor, 148 Ala. 52, 42 So. 625.

The assignments of error as to the action of the court in sustaining these demurrers are not well taken.

Defendant requested the affirmative charge, which was refused, and for a consideration of this assignment of error a very brief review of the evidence (omitting nonessential details) is necessary. Defendant's predecessor in title acquired the right of way (but not the fee) at the place in question from the owners, who also owned the adjoining lands on each side thereof. The road was constructed and in continuous operation more than 20 years prior to the accident; there was no road crossing at this point until some time after the track was first laid and within the period of 20 years prior to the accident. The owners of the adjoining land on each side subsequently built a bridge over the ditch on this right of way and fixed it so they might more easily cross over the track; the owners subsequently subdivided their property and they maintained the bridge and crossing until the storm of 1916, after which Mobile county proceeded to maintain the bridge and continued to do so to the date of the accident. The bridge in question was built by Mobile county in August prior to the accident in December, 1924. Mobile county had also had made and maintained the fill immediately south of the crossing, and the ditch had been under the control and maintenance of the county health authorities. The crossing had been used by the general public for about 16 years; the only connection defendant had therewith was in placing, within the last few years, planks between the rails, and placing a railroad crossing sign usually located at crossings, which there was evidence tending to show had been so placed a long number of years.

As we read and understand the record and briefs of counsel, the foregoing facts are without substantial conflict in the evidence. Nor do we understand there is any contention that the bridge itself was defective either in size or construction, as, under the undisputed proof, it was built in the same manner as are other bridges of that character in Mobile county. The objection was rather as to its location, as outlined by the following testimony offered by plaintiff. The car in which plaintiff was a passenger was traveling on Mohawk street, established by the uncontradicted evidence as a public street or highway in Mobile county, and at that time at this locality a few hundred feet beyond the city limits. The car was going north, and upon reaching the crossing waited for an engine to pass. The driver then proceeded with the car in low speed to cross defendant's tracks. The bridge is north of the tracks, some 11 feet by measurement of one witness and some few feet less by estimate of others. It was dark, and had been raining; the curtains to the car were up, the windshield wiper was in working order, and so were the car brakes and the lights. After crossing the

698

tracks, upon reaching this bridge the right wheels missed the eastern edge of the bridge a very short distance and in that manner was caused to overturn into the ditch, resulting in plaintiff's injuries. Curd, the driver, insists this was the first time he had ever crossed at this point; that as the car approached the track the elevation of the embankment was such as to throw his lights upward so that he could not see the bridge on the other side and down grade from the track; that in order to run upon the bridge and not off to one side in the ditch, an immediate or sharp turn to the left is necessary as you reach the top of the track and there is nothing to indicate to one driving and unfamiliar with the situation that such a turn is necessary; and that one traveling with the road straight across and at right angles to the track would run into the ditch as he did on this occasion. Plaintiff offered other evidence in substantiation of Curd's testimony.

Defendant insisted that the road approaches the railroad at an angle and that the bridge was in line with the roadway travel; that the grade on each side of the track was gradual and that the diffused light of a car while on the track enabled a driver to see the bridge distinctly; that no turn to the left on the track was necessary, but that a car moving in the traveled way as indicated on the road would cross the track and on to the bridge without any turn to the left as indicated by plaintiff, and that Curd, the driver, left the traveled way south of the track. Defendant offered testimony of witness in support of this insistence as well also eight photographs of the crossing, taken considerable time after the accident, tending to like effect.

Plaintiff's theory really rests upon a deception to the traveler crossing the track from the south as to conditions on the north side, without guard rail or other warning that a sharp turn to the left was necessary in order to avoid the ditch, and without opportunity to discover such condition in time.

We are persuaded the evidence of plaintiff presented a jury question as to whether or not the condition of the crossing met the standard of duty resting upon the defendant as indicated in the authorities supra. So. Ry. Co. v. Flynt, supra; N. C. & St. L. Ry. Co. v. Ragan, supra.

Counsel further insist the affirmative charge was due defendant for the reason that the railroad was constructed and in operation prior to the establishment of any crossing, and that the duty of the railroad as to the maintenance of public crossings in a reasonably safe and convenient condition for travelers does not apply to a crossing created subsequent to the construction and operation of the road; that the duty is one imposed by common law and no such duty exists as to

crossings established subsequent to the establishment of the railroad. In brief for appellant authorities are cited sustaining this contention. 33 Cyc. 285; Chicago, R. I. & P. R. Co. v. People, 69 Colo. 266, 193 P. 668; Rock Creek Township v. St. Joseph & G. I. R. Co., 43 Kan. 543, 23 P. 585; North. Cent. R. R. Co. v. Mayor, etc., of Baltimore, 46 Md. 425; B. & A. R. Co. v. Cambridge, 159 Mass. 283, 34 N. E. 382.

We are unwilling to follow in the wake of these authorities, and think the contrary rule as stated in the opinion of Justice Thomas in City of Birmingham v. L. & N. R. R. Co., 216 Ala. 178, 112 So. 742, is correct and supported by better reason and by respectable authority. We approve the following language of that opinion:

"The duty of maintenance of such crossing in a proper condition is unaffected by whether or not the street or public highway was created or constructed before or after the building of the railroad. This is the declared public policy of the state."

As previously noted, the bridge in question was erected and maintained by the county of Mobile. Defendant urges this as proper ground for a judgment in its favor. We think the authorities of So. Ry. Co. v. Morris, 143 Ala. 628, 42 So. 17; So. Ry. v. Morris, 149 Ala. 672, 42 So. 19, and So. Ry. Co. v. Taylor, 148 Ala. 52, 42 So. 625, suffice as an answer to this contention, to which may be added 33 Cyc. 927, and Gates v. Penn. R. R. Co., 150 Pa. 50, 24 A. 638, 16 L. R. A. 554.

The remaining insistence for the affirmative charge on behalf of defendant relates to the question as to the character of the crossing here involved. The duty resting upon the railroad to which the authorities herein cited refer extends only to public crossings, and the crossing in question is so designated in the complaint. And in speaking to this question Mr. Elliott in his work on Railroads (Elliott on Railroads [2d Ed.] § 1102) says:

"This duty, as a rule, however, extends only to the crossings of such highways as were legally laid out or have become such by dedication or prescription."

To like effect is 33 Cyc. p. 928.

See, also, Atlantic Coast Line R. Co. v. Carter, 214 Ala. 252, 107 So. 218.

It is without dispute in the evidence that there has been no condemnation, formal dedication, or sale of any right of way for street road, or other purpose over defendant's right of way at this point, and that its use by the public has not extended to the prescriptive period of 20 years, the use having been about 16 years. Defendant argues therefore that mere acquiescence in the use by the public for a period short of 20 years will not suffice to establish a right in the public and constitute the crossing a public crossing, citing Alabama Great Southern R. v. Godfrey, 156 Ala.

202, 47 So. 185, 30 Am. St. Rep. 76, and Atlantic Coast Line Ry. Co. v. Carter, supra.

But there was more than mere acquiescence in use shown by the proof. Within recent years the planks were placed by defendant between the rails at this crossing, and for a long number of years the regular crossing sign was there located. We do not construe the language of the opinion in Louisville & N. R. R. Co. v. Hubbard, 148 Ala. 45, 41 So. 814, as holding such sign boards conclusive evidence of the public character of the crossing, but that is evidence properly to be considered by the jury in any issue upon that question. In that particular case the opinion discloses that in fact the evidence was undisputed that the crossing was public. "On common-law principles, which still prevail in this state, a road may be effectually dedicated to public use either 'verbally or by writing, by a single act or a series of acts, if clear and unequivocal, as indicating the owner's intention.' * * * The dedication must of course be accepted by the public, but formal acts are not necessary, and acceptance may be effectively shown by a general user by the public. This user need not be for any particular length of time, but only long enough to show that the public are acting upon the theory of a public right resulting from the dedicatory act or acts of the owner." Trammell v. Bradford, 198 Ala. 513, 73 So. 894; Ivey v. City of Birmingham, 190 Ala. 196, 67 So. 506.

The defendant's evidence tended to show that Mohawk street, approaching the right of way of the railroad, which is several feet to the south of defendant's road at this point, is 59 feet in width on each side of the right of way, and that the traveled way over defendant's right of way is 8½ feet wide, with the planking 14 feet in width. A diagram so indicating was also offered in evidence.

The trial court submitted to the jury the question as to whether or not under all the evidence the crossing had become a public crossing by dedication, so as to rest upon defendant the duty hereinbefore discussed. We entertain the view the court correctly so submitted the question for the jury's determination.

Over objections of defendant, plaintiff, in rebuttal, was permitted to offer in evidence a deed executed in July, 1909, by the owner of the fee in the adjoining property to one Walton to a certain lot in the DuBroca tract, according to a map of said tract, which is attached as Exhibit A to more particularly describe and locate said lot, and the map (said Exhibit A) was also introduced in evidence. This map or plat upon the margin expressly stated that its recordation was not to be evidence of any dedication to the public of the streets, alleys, and avenues shown thereon. The owner, however, in August, 1916, filed in the probate office a formal dedication of the streets, alleys, and avenues shown on said map or plat, and this dedication was likewise admitted in evidence. Defendant is not shown to have had any participation in or knowledge or notice of said map or plat or formal dedication. On this map or plat appears Mohawk street, which purports to cross over the location of defendant's right of way at its full width. The effect, therefore, of this evidence, is to disclose a dedication of Mohawk street for its full width across and over defendant's right of way.

Plaintiff insists that, having the fee to the property adjoining the right of way, the owners had the right to so dedicate a street to the public across said right of way, upon the theory that defendant had an easement merely. This argument, however, misconceives the nature of the title of a railroad right of way as defined by the uniform decisions of this court.

In Pratt Coal & Iron Co. v. Davis, 79 Ala. 308, the court, speaking through Chief Justice Stone, said:

"It cannot be denied, that railroad companies are required to keep the approaches to their track, and the track itself, at public crossings, in good repair. * * * With this exception, however, the track is as much the private property of the railroad company, as is the freehold of a mere private citizen. It is no more a public highway, than is the unenclosed domain of the private landholder."

The same writer in Tenn. & Coosa R. R. Co. v. East Ala. Ry. Co., 75 Ala. 516, 51 Am. Rep. 475, had previously pointed out that land claimed and condemned as a roadbed and right of way of a railroad "stand in a different category from that of ordinary easements." Many cases bearing upon this question are cited and quoted in Seaboard Air Line Ry. Co. v. Banks, 207 Ala. 194, 92 So. 117. And in the very recent case of Cent. of Ga. R. Co. v. Faulkner, 217 Ala. 82, 114 So. 686, this court used the following language:

"A railway right of way is declared more than mere easement. The important public use to which it is devoted requires that dominion extend to the limits of the right of way granted by law. * * * Ejectment may therefore be maintained, even against the owner of the fee for the entire right of way, without showing any present need for actual occupancy."

As illustrative of the character of such right of way, condemnation proceedings (in the absence of agreement) are required before one railroad may cross the right of way of another. It is the taking of property "requiring the payment of just compensation before taking." Mobile & B. R. Co. v. Louisville & N. R. Co., 192 Ala. 136, 68 So. 905.

It is therefore clear, upon reason and authority, that the owner of the fee is without right to himself lay out and dedicate to the public use a street or highway across the railway right of way. The execution of the deed, the making of the map or plat, and its recordation and formal dedication by the

owner, were all matters between third persons, with which defendant was not connected or concerned. The following quotation found in Johnson v. Common Council, 127 Ala. 244, 28 So. 700, is here applicable:

"A mere showing that some one, not proved to be the owner, has placed on record a map or plat in which a street or highway is laid off will raise no presumption against a party in possession who has proved title in himself."

See, also, State v. Meaher, 213 Ala. 466, 105 So. 562.

The Supreme Court of Pennsylvania had presented a somewhat analogous question in the case of Nally v. Penn. R. Co., 177 Pa. 117, 35 A. 638, where the owner of the land had granted the road a right of way and subsequently dedicated a street thereon. The court in the discussion of the case used the following expression:

"Whatever might be the effect of his conveyance as between himself and his grantees, it is very certain that he could not give them a free public street, in the unqualified meaning of that expression, because he did not have it to give. * * * As a matter of course, no public highway, in the literal sense of that term, could ever be made of this right of way in hostility to its owners."

See, also, 33 Cyc. 171.

This evidence was res inter alios acta, and inadmissible. Deal v. Hubert, 209 Ala. 18, 95 So. 349; So. Ry. Co. v. Morris, 210 Ala. 463, 98 So. 387; Lay v. Fuller, 178 Ala. 375, 59 So. 609.

It may be added that the evidence as to the map related to the matter of identification and not its correctness, and that, under the authority of Stein v. Ashby, 24 Ala. 521, was inadmissible for this reason also.

Upon the question of the public character of this crossing and its implied dedication by defendant to the public use, it is apparent the ruling of the court constitutes prejudicial error. It is suggested the evidence was admissible to show Mohawk street was a public street, but a complete answer to such a suggestion, without regard to any others, is that this was not a controverted fact in the case, as it was established and undisputed that Mohawk street was a public street or highway. The street itself, as previously noted, was of considerable width, while the traveled way across defendant's right of way was comparatively narrow in width, and it was this traveled way across the right of way that was here involved.

We have examined the oral charge and expressions therein relating to this character of evidence, but we are not persuaded the error in permitting the introduction of this proof was thereby cured, or, indeed, remedied, in any material respect.

The foregoing presents the views of the writer only. Upon consideration of the cause in consultation, however, the other members of the court participating therein, Chief Justice ANDERSON, and Justices SAYRE and BOULDIN, concur only in the point of reversal as herein indicated. Moreover, they are of the opinion the defendant was due the affirmative charge as duly requested. They rest their conclusion upon the undisputed proof that the bridge in question was located and built by the county and had been maintained by the county since 1916, and no duty rested upon the defendant to alter or change the locality of the bridge as constructed and located by the proper county authorities, nor was there any duty under the circumstances here shown upon the defendant to erect any guard rail to indicate a turn in the road in conformity to the bridge so located by the county. Askew v. Hale County, 54 Ala. 639, 25 Am. Rep. 730; Sec. 1347, Code of 1923; Helms v. Houston County (Ala. Sup.) 117 So. 633;[1] Brown v. Shelby County, 204 Ala. 252, 85 So. 416; Ensley Motor Car Co. v. O'Rear, 196 Ala. 481, 71 So. 704; So. Ry. Co. v. State, 130 Tenn. 261, 169 S. W. 1173, L. R. A. 1915B, 766; Gray v. Borough of Danbury, 54 Conn. 574, 10 A. 198; Hill v. Port Royal, etc., 31 S. C. 393, 10 S. E. 91, 5 L. R. A. 349.

Let the judgment be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur as indicated.

### On Rehearing.

PER CURIAM. Upon application for rehearing, and upon suggestion of counsel for appellee, the question of the refusal of the affirmative charge requested by defendant was considered by the whole court, with the result that Justices THOMAS, BROWN, and FOSTER concur with Chief Justice ANDERSON and Justices SAYRE and BOULDIN in the view that the affirmative charge should have been given for defendant, for the reasons stated above.

Application for rehearing denied.

[1] Ante, p. 114.