The jury returned a special verdict, which responding to many issues not discussed upon the appeal, is not wholly inserted in this statement. Those facts pertinent to the issues decided, are fully set out in the opinion of the Court.
His Honor, in the court below, from the finding of the jury, ruled that the defendant was not guilty. From this ruling the State appealed.
The facts of the case, as found by the special verdict, are, that the defendant company, was incorporated by the Legislature of the State, at its session of 1833-4, and constructed its road and made a cut at the point in question, in the year 1835. This cut was outside of the corporate limits of the city of Wilmington, as it then existed; it is 47 feet wide, 18 feet deep, and 400 yards long. In 1835, when the railroad was first constructed, there was no public road or highway, at said point, to be intersected by the railroad, and the defendant Company then built a bridge at this point, over the cut, and kept it up until 1860, since which time the bridge has been used by the public.
In the year 1849, the corporate limits of the city were enlarged by an act of the Legislature, and Fourth Street was extended to and across the railroad, at the point in question, and has been, since that time, a public way, established by law.
The bridge in question was rebuilt by the defendants in 1860, and at that time it was sufficient to accommodate the public and afford them a free passage; but since that time the population of the city has greatly increased, and at the finding of the indictment, it was and still is insufficient, as constructed to accommodate the public, by reason of itsnarrowness, and the free passage of travellers over said bridge and along said public highway was, and still is thereby impeded. The bridge is 18 feet and 9 inches wide between the hand-rails.
The indictment charges the defendant company with the commission of a nuisance, in omitting to build a wider and sufficient bridge across their railroad, where it is intersected by the public highway. It is found and not disputed, that the highway was laid out and openedafter the railroad was constructed; but it is insisted by the State that the defendants are guilty upon two grounds, to-wit: First by the general law; and second, by the charter of the Company. (145)
1. The right of laying out the street and highway across the railroad is conceded, and the enquiry is, whether the city corporation, *Page 120 
or the defendant Company is bound to construct and maintain the the wider bridge. By the common law as well as by our statute, Bat. Rev. chap. 104, Sec. 1, the duty of making and repairing public bridges devolved upon the counties, unless some other persons or bodies were made liable by some special obligation. 2 Inst. 701; 2 East, 342: But the State insists that this special obligation to make and repair this bridge as required, devolves upon the defendants by virtue of the 36th Sec. of chap. 104 of Bat. Rev. which provides that "railroad companies, plank road and turnpike companies, each shall keep up at their own expense, all bridges on or over county or incorporated roads, which they have severally made necessary to be built in establishing their respective roads." To this the defendants reply, true, but this act was passed in 1838, three years after the construction of the railroad, and therefore cannot make that criminal which was innocent when done. But by the rule for construing statutes, especially penal statutes, the act applies only to railroads thereafter to be built, in the building of which it may become necessary to intersect or interfere with a public highway then existing. If the act in direct terms, had applied to railroads previously constructed and in operation, an interesting question as to the extent of the police power of the State, as affecting railroad charters would have been presented.
2. The State next insists that the obligation to build and maintain the bridge in question is devolved upon the defendant Company by virtue of the 27th section of their charter. That section enacts: "That it shall be lawful for the said Company in the construction of said road to intersect or cross any public or private way established by law, and it shall be lawful for them to run their road along the route of any of said roads; Provided, That whenever they intersect (146) or cross said public or private roads, the President and Directors shall cause the railroad to be so constructed as not to impede the passage of travellers on the public road, or private way aforesaid; and whenever the railroad runs over and along with such common road or way, the president and directors shall cause the new common road, (which shall be laid out by order of the County Court upon the petition of said president and directors) to be opened at their expense."
It is unnecessary to consider whether this proviso includes the building of bridges or not, for without the proviso at common law, the obligation would be imperative upon the company to build bridges over highways intersected by them, whenever such bridges are necessary; and the omission to build them, would obstruct the highway. The true question, whether thisproviso, superadds to the duties imposed by the common law, the obligation to make and repair bridges, made *Page 121 
necessary by roads laid out, subsequent to the construction of the railroad. We do not think it does.
The language of the 27th section of the chapter, is not stronger than, or as strong as that used in Bat. Rev. chap. 104, Sec. 36, before cited, which we hold to be clearly insufficient to charge the defendants, The obvious purpose, both of the general law and the proviso, was that these railroad companies in regard to highways, should as far as possible, leave them as they found them: when they obstructed a passage along them, they had to furnish a new one. In our case, the highway was laid out in 1849, or fourteen years after the construction of the railroad. No public road was in existence at that place, when the railroad was built, and therefore no highway was obstructed by the act of the defendants. To give the 27th section of the chapter, the construction insisted upon by the State, would be to extend the meaning of the language used, beyond its fair and natural import, without any adequate reason; for the contrary construction does not deprive the public of the right to have the road or bridge, whenever the necessity requires, but at most, the question is, who shall (147) incur the expense of altering the bridge, the company which built its road long anterior and in pursuance of law, or the city corporation whose growing prosperity demands an enlargement of its boundaries, and new and larger avenues of travel and trade. The burden, we think, should fall on the latter.
The very question raised here, was made and decided in The Morris Canal Banking Co. v. The State, 4 Zabriskie, 62. The indictment was for not keeping in repair a certain bridge over the canal of the defendants, where the same crossed a public highway, in the county of Passaic, and was founded on the 12th section of their charter, which enacts, "that when the canal shall cross any public road or farm, it shall be the duty of said company, at their proper expense, to make good and sufficient bridges, across said canal, and to keep the same in repair," etc. The facts were agreed upon, of which the only one material to the question upon which the decision is given was, that the public highway in question was laid out after the canal was constructed. The court held, that neither by the principles of the common law, or by their charter, was the company compelled to make and maintain such bridges.
3. Our case states that in 1860, after the street had been established by law across the railroad, at the bridge, the defendants rebuilt the bridge, and that it has been ever since used by the public. Without any explanation, this is a clear dedication of the bridge to the public use. Where the intention of the owners to dedicate the bridge to the public is evident, no former or official acceptance is necessary to constitute *Page 122 
it a public bridge by dedication. Buchanan v. Curtis, 25 Wis. 99. But it is the dedication of the bridge as constructed, towit, 18 feet, 9 inches wide. The defendants have made no dedication of a bridge of a different character or dimensions, and are under no obligations to vary and enlarge their bounty to suit the subsequent varying (148) wants of the public. Whether the defendants are bound to repair and keep up the bridge as now constructed, is a question not raised in the case, and which we do not decide. The bridge appears to have been built, originally, as well for the benefit of the defendants as the public. Certainly the deep cut made by the defendants, became a serious public inconvenience, and in consideration thereof, it may perhaps be assumed, that the defendants undertook to and did dedicate the bridge to the public, coupled with the obligation to keep it in repair. The fact that they have rebuilt the bridge and kept it in repair, to the present time, supports this view, but we do not decide the point. The defendants are indicted for not widening the bridge so as to afford a free and convenient passage for the increased public travel, and our decision is that they are not bound to do so.
There is no error.
PER CURIAM. Judgment affirmed.