## COMPENSATION TO RAILWAY WHERE STREET IS EXTENDED UNDER TRACKS.

THE CINCINNATI, HAMILTON & DAYTON RAILWAY CO. ET AL V. THE CITY OF TROY.

Decided, June 16, 1903—68 Ohio State, p. 510.

*Appropriation of Property of Railroad—To Extend Street Under its Tracks—Railroad Company Entitled to Compensation for Building Necessary Bridge.*

In a proceeding to appropriate the property of a company owning an existing railroad for the purpose of extending a street under its tracks, such company is entitled to compensation for the cost of a bridge or viaduct to carry its trains over the street.

Error to the Circuit Court of Miami County.

A proceeding by the city to appropriate property for the extension of McClung street across the railroad owned by the Dayton & Michigan Railroad Co., and operated and held under lease by the Cincinnati, Hamilton & Dayton Railway Co., was tried in the court of common pleas for the determination of compensation and damages. At the point of intersection of the railroad company with the proposed street the railroad had been constructed upon a high fill so that the proposed improvement would require the trains to be carried over the street upon a bridge whose construction it was admitted would be made necessary by the proposed extension of the street. The jury returned a verdict as follows:

"For land taken for said street from outlot No. 19.... $ 125.00
"For damages to residue of said outlot and for crossing
    said railroad right of way.......................  75.00
"Damages for construction of viaduct over said street at
    said crossing ..................................  6,117.00

       "Total assessment ......................... $6,317.00"

A motion for a new trial having been overruled, judgment followed the verdict. The city filed a petition in error in the circuit court where the judgment was reversed because in the opinion of that court the judge of the common pleas court had erred in charging the jury. The substance of the charge is stated in the opinion.

*R. D. Marshall, A. F. Broomhall* and *A. McL. Marshall,* for plaintiffs in error.

*Gilbert & Shipman,* for defendant in error.

SHAUCK, J.; BURKET, C. J., SPEAR, DAVIS and CREW, JJ., concur.

In the introductory and general portion of the charge there is a use of inappropriate language upon which counsel for the city base the claim that the jury were directed that in estimating the damages to the portion of the property not taken there could be no deduction on account of benefits which might accrue to it from the extension of the street, but no criticism is or could be made upon that portion of the charge in which particular instruction was given upon that subject. Viewing the entire charge, it appears that the trial judge entertained the view, admitted to be correct, that in determining the value of the property taken there could be no deduction on account of benefits to the residue, but that in determining the damages to the residue they should ascertain the damages upon all considerations affecting that question. It does not seem likely that the instructions would mislead the jury in that particular, and attention to the evidence and the verdict shows that they did not.

The question of importance arises out of that portion of the charge in which the jury were told that their verdict should include the cost of constructing the bridge or viaduct which would be necessary to carry the trains of the railway company over the proposed street. The substance of the instruction upon that point is as follows:

"The jury will determine from the evidence what amount will be necessary to pay, at the ordinary market price, for placing in position the bridge or viaduct, with the necessary abutments and superstructure to protect against injury to travelers, and to con-

struct of such materials as are required by the present standard of railway construction. This will constitute the third item for which the defendant companies are entitled to compensation in this case.

"The jury after having allowed the necessary amount to pay for the construction of this bridge or viaduct, and such appurtenances to it as will protect persons passing underneath, in the manner as described, will not, however, in addition to that, allow anything for damages or compensation for expenses that the railroad company are or may be put to in the future to maintain such bridge, and keep it in order. That, in the opinion of the court, is a matter for which the railroad company can not recover in this case, and is not a proper matter for the jury to take into consideration in settling the amount of damages and compensation to be allowed."

This portion of the charge is said to be erroneous, because it is within the legitimate exercise of the police power of the state to require such structure to be erected by a railroad company at its own expense. But here was an obvious exercise of the right of eminent domain, and since the exercise of the police power is primarily with the General Assembly, it is orderly to enquire whether by the terms of existing legislation the duty of constructing the bridge rests, in a case of this character, upon the railway company or upon the municipality. The duty is not imposed upon the railroad company by the portion of Section 3324, Revised Statutes, which requires of railroad companies the construction and maintenance of safe and sufficient crossings. That the provision relates to cases in which the construction of the highway precedes that of the railroad company is apparent from the time fixed by the statute for the performance of the duty. It requires the railroad company to construct such crossing "before it operates its road." No other section of the statute is cited as imposing this obligation upon the company, nor are we aware of any provision to indicate the legislative intention to impose it. Numerous cases are cited, some from our own reports, showing the exercise of legislative power to protect life and property at grade crossings by regulating the construction of approaches, cattle-guards, etc., and the manner of operating trains. Some of these impose upon railroad companies the incidental expenditure of money, but they have not, on that account,

been held to be invalid. But none of them authorizes the conclusion that such an important structural change as is here contemplated may, without compensation, be required of the owner of an existing railroad to accommodate a highway to be subsequently established. The distinction between burdens which are incident to the construction of a railroad and those which are incident to the operation may in some cases be obscure, but the burden in the present case obviously relates to construction. It is equally obvious, in view of the fact that the construction of the railroad preceded that of the street that the question is to be determined under existing legislation by the application of the doctrines relative to the appropriation of private property. It is admitted that the instructions given to the jury were in accordance with those doctrines as they should be applied in the appropriation of private property belonging to natural persons. That the same doctrines should be applied to the appropriation of property belonging to a railroad company was determined in *Railway Co.* v. *Railway Co.*, 30 Ohio St., 604. Within those doctrines it is not practicable to distinguish the floor from the other portions of the bridge. Since the legislative department of the state has not attempted to exercise the supposed police power in a case of this character, we have no occasion to consider whether it would be a proper subject of its exercise.

*Judgment of the circuit court reversed and that of the common pleas court affirmed.*