Donahue, J.
By mutual consent of the parties
to this controversy, the only question submitted to this court for determination is the question of the constitutionality of an act of the general assembly of Ohio passed April 7, 1908, entitled: “An act to authorize the state board of health to require the purification of sewage, public water *18 supplies and to protect streams against pollution,” which act is now Section 1249, et seq., General Code. This act, in substance, provides that whenever complaint in writing is made to the State Board of Health that a city, village, corporation or person is discharging, or permitting to be discharged, sewage, or other waste into a stream, water-course, lake or pond, and thereby creating a public nuisance detrimental to health or comfort, that it shall be the duty of such board of health to forthwith inquire into and investigate the conditions complained of; if upon such investigation the complaint is found to be true, that it thereupon notify such city, village, corporation or person causing the contamination or pollution of the stream, water-course, lake or pond, and give it or •him an opportunity to be heard; if after such hearing, the State Board of Health shall determine that improvements or changes are necessary and should be made, it is its duty to report its finding to the governor and attorney general, and upon their approval notify the city, village, corporation or person to install works or means satisfactory to the State Board of Health for purifying, or otherwise disposing of its sewage, or to change or enlarge existing works in a manner satisfactory to said board, and to fix a time at which the same must be completed, which time shall also be subject to the approval of the governor and attorney gen-' eral. It is further provided in section 4 of the act, that when such order so approved is not acceptable to any city, village, corporation or owner affected thereby, it or he shall have the right to appeal the question of the necessity and rea *19 sonableness of such order to two reputable and experienced sanitary engineers, one to be chosen by the city, village, corporation or owner, the other to be chosen by the State Board of Health, but the person so chosen shall not be a regular employe of said board, and if these engineers are not able to agree, then they shall chose a third engineer of like standing. The engineers constituting such board of reference shall have power to affirm, modify or reject the order of the State Board of Health submitted to them, and their decision shall be final.
It is further provided that no city or village that is now discharging sewage into any river which separates the state of Ohio from another state, shall be required to install sewage purification works as long as the unpurified sewage of cities or villages of any other state is discharged into the river above said Ohio city or village. In Section ■1251, General Code, which contains this provision, the word “now” before the word “discharging” is omitted.
The constitutionality of this act is assailed by the defendant in error upon the following grounds:
1. It provides for compulsory arbitration, and therefore in conflict with Sections 5 and 16 of Article I of the Constitution of the State of Ohio;
2. It coerces city officials into compliance with the orders of the State Board of Health, and controls their discretion by severity of penalty, and therefore in conflict with Section 1 of Article XIV of the Constitution of the United States;
3. It delegates the taxing power of said city to the State Board of Health, and therefore in conflict *20 with Sections 2 and 5 of Article XII of the Constitution of the State of Ohio;
4. The act being a law of a general nature does not have uniform operation throughout the state, and is, therefore, in conflict with Section 26 of Article II of the Constitution of the State of Ohio.
Before discussing these several objections in detail, it is well to give some attention to the general principles applicable to all of them. A court is not authorized to adjudge a statute unconstitutional where the question of its constitutionality is at all doubtful. The question of the constitutionality of every law being first determined by the legislature, every presumption is in favor of its constitutionality. It must, therefore, clearly appear that the law is in direct conflict with inhibitions of the constitution before a court will declare it unconstitutional. Nor has the question of the wisdom of the legislation anything to do with determining its constitutionality. That question is for the legislature, and whether the court agrees with it in that particular or not is of no consequence. It is solely a question of power. If the legislature has the constitutional power to enact a law, no matter whether the law be wise or otherwise it is no concern of the court. If the legislature had not the constitutional power to enact the law, it is not important how wise, necessary or beneficent the legislation may be, it is necessarily void as being in conflict with the organic law of the state.
The court will not measure its opinion with the opinion of the legislative branch of the government upon questions of the expediency, justice or *21 necessity of a law. In the case of Lindsay et al. v. Commissioners, 2 Bay (S. Car.), 61, the court used this language: “In exercising this high authority, the judges claim no judicial supremacy; they are only the administrators of the public will. If an act of the legislature is held void, it is not because the judges have any control over the legislative powér, but because the act is forbidden by the constitution, and because the will of the people, which is therein declared, is paramount to that of their representatives expressed in any law.”
This particular legislation now under consideration is designed to preserve and protect the public health and comfort, and, therefore, falls directly within the police power of the state. This power includes anything which is reasonable and necessary to secure the peace, safety, health, morals and best interests of the public. It is now the settled law that the legislature of the state possesses plenary power to deal with these subjects so long as it does not contravene the Constitution of the United States of infringe upon any right granted or secured thereby, or is not in direct conflict with any of the provisions of the Constitution of this state, and is not exercised in such an arbitrary and oppressive manner as to justify the interference of the courts to prevent wrong and oppression. The right of a court to interfere with the legislature of a state in the exercise of police power is very clearly expressed by Mr. Justice Harlan in the case of Jacobsen v. Massachusetts, 197 U. S., 11: “If there is any such power in the judiciary to review legislative action in' respect of a matter affecting the general welfare, it can only *22 be when that which the legislature has done comes within the rule that if a statute purporting to have been enacted, to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.” This doctrine has also been declared in the case of Mugler v. Kansas, 123 U. S., 623; Minnesota v. Barber, 136 U. S., 313, 320; Atkin v. Kansas, 191 U. S., 207, 223. The possession and enjoyment of all rights guaranteed to the citizen under .the constitutions of the United States and the state of Ohio are subject to such reasonable conditions as may be deemed by the governing authority of the state essential to the safety, health, peace, good order and morals of the community. It is said by Mr. Justice Field in the case of Crowley v. Christensen, 137 U. S., 86, that: “Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one’s will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others.” In the case of Holden v. Hardy, 169 U. S., 366, it was held that: “It is as much for the interest of the state that the public health should be preserved as that life should be made secure. With ■ this end in view quarantine laws have been enacted in most if not all of the states; insane asylums, public hospitals and institutions for the care and education of the blind established, and special measures taken for the exclusion of infected cattle, rags and decayed fruit. In other *23 states laws have been enacted limiting the hours during which women and children shall be employed in factories; and while their constitutionality, at least as applied to women, has been doubted in some of the states, they have been generally upheld.” In this state the authority of the general assembly to exercise the police power of the state is no longer an open question. It has been settled by numerous adjudications that such power may be exercised by the general assembly of the state according to their judgment and discretion in any manner not inconsistent with or repugnant to provisions of the state or federal constitutions. Commissioners of Champaign County v. Church, Admr., 62 Ohio St., 344; Cincinnati, Sandusky & Cleveland Rd. Co. v. Cook, 37 Ohio St., 265; C. H. & D. Rd. Co. v. Sullivan, 32 Ohio St, 152; L. S. & M. S. Ry. Co. v. C. S. & C. Ry. Co., 30 Ohio St., 604; C. H. & D. Ry. Co. v. City of Troy, 68 Ohio St., 510.
It is true that the mere assertion by the legislature that a statute relates to the public health, safety or welfare, does not bring that statute within the police power of a state. It must appear from the statute itself that its real intent and purpose is the conservation and preservation of public health, public safety or public morals, and when this fully and- clearly appears, then the doctrine announced in the case of Jacobsen v. Massachusetts, supra, applies, and a court will then only inquire whether such legislation is “beyond all question a plain, palpable invasion of rights secured by the fundamental law.” The legislation we are considering admits of no doubt as to the purposes to be sub- *24 served thereby. It is clearly an effort on the part of the legislature of the state to preserve and protect the public health and comfort, and the only remaining question for this court is, whether it clearly appears that this legislation is in conflict with organic law.
The first contention of counsel for defendant in error is that it provides for compulsory arbitration, and is, therefore, in conflict with Sections 5 and 16 of Article I of the Constitution of the State of Ohio. Section 5 of Article I provides that: “The right of trial by jury shall be inviolate.” Section 16 provides that: “All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law; and justice administered without denial or delay.” If this objection were sustained it would by no means invalidate the whole statute, but, in so far as this defendant in error is concerned, there is in this provision no violation of its constitutional rights. The powers of a municipal corporation are delegated powers. It is a creature of statute over which the general assembly of Ohio has as sovereign control as it has over any other part of the territory embraced within the state limits, and the municipal legislature has such power only as the legislature of the state confers upon it, and it may grant or withhold at pleasure. A municipality is at best but a mere agency of the state, and its right to control its own local affairs rests wholly on the general grant of powers by the general assembly of the state. The state is still the sovereign and may extend, limit or revoke these powers at will. *25 In granting to a municipality certain powers to be exercised for the benefit of the public health of that municipality the state has not relinquished its authority and control in this important particular over any of the territory comprised within the limits of the state. The duties and powers of the State. Board of Health extend throughout the state irrespective of political divisions or territories embraced within municipalities. Section 1237, General Code, provides that: “The state board of health shall have supervision of all matters relating to the preservation of life and health of the people and have supreme authority in matters of quarantine, which it may declare and enforce, when none exists, and modify, relax or abolish, when it has been established. It may make special or standing orders or regulations for preventing the spread of contagious or infectious diseases, for governing the receipt and conveyance of remains of deceased persons, and for such other sanitary matters as it deems best to control by a general rule.” Section 1238 provides that: “Local boards of health, health authorities and officials, officers of state institutions,police officers, sheriffs, constables and other officers and employes of the state or any county, city or township, shall enforce the quarantine and sanitary rules and regulations adopted by the state board of health.” These general provisions for the preservation of the life and health of the people of this state are no more suspended in the territory comprised within a municipality than are the criminal laws of the state, and the case now under consideration would illustrate the folly of a state delegating to any municipality full and complete *26 control of matters pertaining to the public health. A municipality might then in the preservation of sanitary conditions in its own territory work incalculable mischief to the health and comfort of people living in adjacent territory. To prevent this being done, it is primarily necessary that there should be one central authority clothed with the power of affording equal protection to all. The provision in this legislation by which a municipality may challenge the judgment of a state board of health and submit the question to a board of arbitration composed of men skilled in sanitary work is a most liberal provision so far as municipalities are concerned, and far more liberal than many of the statutes relating to the powers of a state board of health. There is no theory upon which a mere agency of the state has a right to litigate the right of the state to enforce, through any agency it pleases, sanitary rules and regulations for the preservation of the health and comfort of all the people of the state.
The second ground urged against the constitutionality of this act is that it coerces city officials in the compliance with the orders of the State Board of Health and controls their discretion by severity of penalty, and is therefore in conflict with Section 1 of Article XIV of the Constitution of the United States which provides: “No state shall make or enforce any law which shall abridge the privileges or immunities of. citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
*27 What has been said with reference to the first objection to the constitutionality of this legislation, as well as what further may be said with reference to the third objection, applies, equally to this contention. The state does not seek to control the discretion of the municipal authorities in this matter, but on the contrary refuses to commit to them any discretion touching the particular matters committed to the care and control of the state board of health. In so far as they are charged with any duty in reference to the carrying out of the orders and directions of the State Board of Health they are ministerial officers only, and it is fully settled that a public officer may be required to perform a ministerial act, and that a failure or refusal by such officer to perform a ministerial act may be made a criminal offense and punished as a misdemeanor. The question whether he is guilty of this misdemeanor is a proper question for judicial inquiry, and, if he be innocent of any dereliction, neglect or refusal on his part, the courts will protect him. The law in this respect does not seek to deprive him of liberty or property without due process of law, nor does it deny to him equal protection of the laws. In our system of government there is nothing anomalous in the fact that án officer that is vested with official discretion in many matters and things pertaining to his office may nevertheless be required to perform certain ministerial duties. In so far as official discretion is concerned, courts will not interfere unless he is guilty of a plain abuse of discretion, but ministerial acts may always be enforced and there is no constitutional objection to imposing upon him, for *28 failure to perform ministerial duties, a fixed penalty or a penalty within fixed limits to be imposed by the tribunal authorized to determine his guilt or innocence.
Far more difficult is the question of the right of the legislature to compel the local taxing power to act in a ministerial capacity, if it has this right then nothing further need be said touching the second ground urged by the defendant in error, for if in this respect the municipal authorities are lawfully and properly shorn of discretion and are performing merely a ministerial duty in levying the taxes necessary to comply with the order of the State Board of Health, then the provision for penalties for failure to do this is clearly constitutional. This brings us to the consideration of the third contention, that the legislation is unconstitutional because it delegates the taxing power of the city to the State Board of Health, and for this reason is in conflict with Sections 2 and 5 of Article XII of the Constitution of the State of Ohio. Section 2 provides for taxing, by a uniform rule, of moneys, credits, investments in bonds, stocks, joint stock companies or otherwise; and also of real and personal property according to its true value in money, except as to certain bonds, burying grounds, schoolhouses, churches and institutions of purely public charity and property used exclusively for any public purpose, and certain exemptions for each individual. Clearly this law is not in conflict with this provision of the constitution, for all property within the city is to be equally taxed and the only question that could arise is as to whether the improvement ordered is *29 particularly required by the people of the city, and is so exclusively for their benefit that the city alone should bear the entire cost. About this question there can be but little doubt. If the city possessed the absolute right to discharge its sewage into a living stream of water, thereby polluting the same and destroying all riparian rights below and creating a menace to the health and comfort of those living on the banks of this stream below the point of discharge, then it might be said that any change in the manner of sewage disposal would not be for the benefit of the city, but for those citizens of the state residing below the outlet of the city sewers. But the city has no such absolute right, and whenever this condition of affairs exists it is right and proper for the state to interfere and prevent it from a further continuance of this nuisance, and the city then having no other means for the disposal of its sewage, it is primarily for its benefit that such disposal plant must be established. While it then becomes largely a local improvement, yet it is not one that the state has delegated to the municipal authorities complete and absolute control thereof. The health of the inhabitants of the city is still a matter of concern to the state, and of such vital concern that the general assembly has not thought proper to commit it exclusively to the control and discretion of men who may or may not have any particular ability or experience in sanitary affairs. The loss of a single life is a direct economic loss to the state, and, therefore it wisely refrains from committing to inexperienced people final discretion as to the means and methods of preserving the life and *30 health of its citizens, but aside from the concern of the state for the health and comfort of the residents of any one city; its vigilance seeks to serve a larger purpose. Cities are no longer enclosed by stone walls and separate and apart from the balance of the state. The sanitary condition existing in any one city of the state is of vast importance to all the people of the state, for if one city is permitted to maintain unsanitary conditions that will breed contagious and infectious diseases, its business and social relation with all other parts of the state will necessarily expose other citizens to the same diseases. With the wisdom or folly of withholding from the local authorities'final discretion over these matters, we are not concerned. It is beyond question the right of the general assembly to do so, and the court need not, and ought not to, inquire what motives moved it in withholding such power.
The disposal plant is for the benefit of the residents of the city. It is the primary duty of the city to provide for sanitary disposal of its sewage, and it is not in violation of any provision of the constitution that it should bear the entire cost of erecting and maintaining a purification plant and to require it to do so is not an arbitrary, unreasonable or unfair exercise of the police power of the state. State, ex rel., v. Freeman, 61 Kans., 90; State, ex rel. Bulkeley, v. Williams, 68 Conn., 131.
Section 5 of Article XII provides that no tax shall be levied except in pursuance of law and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied. It is difficult to see how this legislation offends *31 against this provision of the constitution. It is clear that this tax is to be levied in pursuance of law, and the object of the taxation is distinctly-stated, and there is no intention or effort to apply the money raised thereby to any other purpose, so that every condition required by the constitution in this respect would appear to be fully complied with, but the contention that the power to levy this tax is taken from the taxing authority of the city and conferred upon the State Board of Health is not so easily disposed of. Section 6 of Article XIII provides that the general assembly shall provide for the organization of cities and incorporated villages by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credits so as to prevent the abuse of such power. By this provision it will be seen that municipal corporations have not plenary power to levy taxes, but are subject in that behalf entirely to the will of the general assembly of Ohio as expressed in the statutory laws of this state. This law does not pretend to clothe the State Board of Health with the power to levy taxes, but it does confer on that board the power, subject to the right of appeal to a board of arbitrators, as therein provided, to require the city to install works or means satisfactory to the board for purifying, or otherwise disposing of its sewage, and leaves to the municipal authorities -the duty of complying with this order and of providing by taxation the means with which to comply therewith. This legislation does not differ in any particular with many other provisions relating to the power of the *32 State Board of Health. We must not overlook the fact that the general assembly is sovereign. It creates this state board of health as an agency to assist it in that important function of government looking to the preservation of public health and comfort, and authorizes it to determine what will best conduce to such ends, and then it directs other agencies of the government to carry into effect the orders and directions of that board. It could do all this without the aid of any agency. The fact that a principal employs an agent in the conduct of his business in no way curtails the power and authority of the principal. This provision in Section 6 of Article XIII of the constitution is not unlike the provisions contained in Section 7 of Article X relating to counties and townships.
In the cases of the Board of Commissioners of Champaign County v. Church, and Caldwell v. The Board of Commissioners of Cuyahoga County, 62 Ohio St., 318, practically the same question was raised. These were actions to recover damages from the county for injuries alleged to have been received at the hands of a mob. Among other things, the statute provided that where a recovery was had that an order should be entered directing the commissioners of the county to include the same in the next succeeding tax levy. This law left the taxing authority, to-wit, the commissioners of the county, wholly without discretion in the matter. They were required at all events to provide for the payment of the penalty recovered by the plaintiff, if any, and, therefore, the claim was made that it was a delegation of taxing power to the court, and that it and not the commissioners *33 made the levy of taxes to provide for the payment of this penalty. ■ This court held that act constitutional, and in paragraph 3 of the syllabus declared that: “Such recovery, and the tax levy authorized and required by said act,. are within the general powers of 'the legislature, and the provisions of Section 7 of Article X of the constitution; and such recovery and levy 'are not in contravention of Section 19 of Article I of the constitution.” This case does not differ in principle from these two cases. There the taxing authorities of the county made the levy just the same as the taxing authorities of the city of Greenville are to make this levy. There the commissioners were deprived of all discretion, although the constitution expressly provided that they should have “the power of local taxation, for police purposes, as. may be prescribed by law.” Yet, so far as this levy is concerned, they had no discretion whatever. They were required to make it as an agency of the governmental powers of the state, without regard to their official judgment as to its necessity.
In the case of State v. Freeman, 61 Kans., 90, it was held that: “The act of the legislature in arbitrarily establishing a high school and requiring its maintenance by the people of a county is not an unconstitutional interference with the rights of local self-government.”
In the case of State, ex rel. Bulkeley et al., v. Williams, Treasurer, 68 Conn., 131, it was held that the legislature could impose on territorial subdivisions of the state the burden of constructing and maintaining highways and bridges. The court in disposing of that question said: “If an absolute *34 right in the inhabitants of our towns to regulate their town finances and affairs superior to all legislative control ever existed, it was certainly not such a right as survived the adoption of our constitution.”
The Constitution of the State of Illinois provides that the corporate authorities of cities may be invested with the power to assess and collect taxes for corporate purposes.
In the case of People, ex rel., v. Mayor, 51 Ill., 17, while holding that the park commissioners created by an act of the legislature of that state could not be delegated the power to levy and collect taxes or compel the city to incur debts without the consent of the municipal authority, yet the fourth paragraph of the syllabus in that case is as follows: “To what extent this constitutional provision is a limitation upon the power of local taxation directly by the legislature itself, is not a question in this case, but it seems there may be cases where the legislature, without the consent of the corporate authorities, might impose taxes, local in their character, if required by the general good government of the state, because such taxes would not be merely and only for corporate purposes.”
In this case it is apparent that the tax is levied for governmental purposes clearly within the control of the general assembly, notwithstanding it is especially for the needs and the benefits of the city of Greenville and is primarily for the corporate purposes of the city of Greenville. This fully appearing, it is not arbitrary or unfair to require the city to bear the burden and to conform *35 to the orders and requirements of the State Board of Health by discontinuing the discharge of its sewage into a living stream and providing a proper disposal plant, so that the health of not only the citizens of the state residing in that city shall be preserved and protected, but of all the people in the state coming in business or social relation with them. The state would be powerless to perform this important function of government if the local officers were permitted to exercise their discretion in levying or refusing to levy a tax for that purpose.
The fourth objection to this act of the general assembly, urged by counsel for plaintiff in error, in their printed briefs is as follows: “Said act being of a general nature, does not have uniform operation throughout the state, and is, therefore, in conflict with Section 26 of Article II of the 'Constitution of the State ofs Ohio.” That portion of the act said to violate this provision of the constitution is as follows: “Provided that no city or village that is now discharging sewage into any river which separates the state of Ohio from another state shall be required to install sewage purification works as long as the unpurified sewage of cities or villages in any other state is discharged into said river above said Ohio city or village.”
This contention presents the most difficult question in this case. The act under consideration is beyond all question a law of a general nature, and therefore, is clearly subject to the prohibition of this section of the constitution. It is suggested that if this exception, classification, or whatever it may be called should be found to be unconsti *36 tutional, that portion alone of the statute should be declared void and the balance permitted to stand, but that cannot be done, for the reason that the statute would then apply to the municipalities now excluded from its operation. A court may sometimes hold a portion of the statute- unconstitutional and the balance of the statute valid, when the result would be to relieve persons or territory from the provisions of the statute, but it can never do this when the result would be to extend the law to additional persons or territory. To do this would be invading the province of the general assembly, and would be legislating for territory never included by the general assembly in the operation of the statute. There is a provision, however, in this exception as found in the original enactment, that a court might hold to be invalid and still sustain the residue óf the original act, and that is in reference to cities that might hereafter come within the same class and condition as those now discharging sewage into the river. But whether it should do so or not with this particular act is now unimportant. In the General Code of Ohio, the language of this section has been changed and it now reads: “But no city or village discharging sewage into a river which separates the state of Ohio from another state,” etc. Therefore, the statute as it now reads exempts all cities that may now, or hereafter, discharge sewage into a river which separates the state of Ohio from another state so long as the unpuriñed sewage of cities or villages of another state is discharged into the river above such village or city of this state and we take it that counsel are more particularly interested *37 in having the constitutionality of the present law determined than in having this court answer a moot question.
The question then presented is whether the general assembly of Ohio has attempted a classification or an exception which is a false, unnecessary and arbitrary one, or whether it be reasonable, just and necessary. This court has repeatedly held that classification is often proper and sometimes necessary in legislation in order to define the objects on which the general law is to take effect, but has taken equally as firm a stand against any arbitrary, vicious or faulty classification used to evade this constitutional limitatidn. Gentsch v. State, 71 Ohio St., 151. We take judicial notice of the fact that the Ohio River is the only river that comes within the terms of this exception. This river separates the state of Ohio from the states of Kentucky, West Virginia and Pennsylvania. This court held in the case of Booth v. Shepherd, 8 Ohio St., 243, that: “The territorial limits of the State of Ohio extend on the southeast at least to the line of ordinary low-wrater mark on the- northwest side of the Ohio River.” The Northwest Territory was described in the cession by the states to the general government as “territory situate, lying and being to the northwest of the Ohio River,” and it was held in the case of Handly’s Lessee v. Anthony, 5 Wheat., 374, that where “one state is the original proprietor and grants the territory on one side onfy, it retains the river within its own domain, and the newly created state extends to the river only.” Neither of the states being a party to that litigation this would not be a final adjudica *38 tion with reference to their proprietary rights, but if the Ohio River is without the boundary of the state of Ohio and territory over which the general assembly has no control, as these adjudications would indicate, any attempt to legislate in reference thereto would necessarily be futile.
We are not concerned with the riparian rights of lower proprietors on the Ohio side of the Ohio River, nor with the remedy they may have for any private wrongs to these rights. In this inquiry we are only concerned with the authority of the state to extend its jurisdiction over the territory occupied by the Ohio River, and if that territory is not a part of the territory of Ohio, this exception, whether written into the law or not, must necessarily obtain, for even if the act by its terms included the Ohio River and that river is not a part of Ohio it would be extra-territorial and impossible of enforcement over that territory. This act in its title declares, among other things, that it is an act “to protect streams against pollution.” This certainly refers to streams within and not without Ohio, and could not by any liberality of construction be held to include rivers beyond the state’s territorial limits.
This is too important a question to determine in a cause where it arises only incidentally to the main issue in the case, especially when it is not necessary to the disposition of the case at bar, for if it be conceded that the territorial limit of the state extended to the center of the Ohio River, the objection would not necessarily be well taken. Every law is supposed to serve some purpose, and it would be absurd to impose burdens upon per *39 sons, corporations, villages and cities that could not possibly work to the public good or operate to public advantage or the protection of private rights. One of the evident purposes of this act, and so declared in its title, is to prevent the pollution of streams, and where it is apparent that the state is powerless to prevent this pollution by reason of the control and authority of states bordering the opposite bank of a river, it would not only be folly but unjust and arbitrary to compel the citizens of this state to do or refrain from doing any act, the doing of which,"or the- refraining from which, would operate to no good purpose, either public or private.
It has been repeatedly held by this court that where a law is available in every part of the state as to all persons and things in the same condition or category, it is of uniform operation throughout the state. State, ex rel., v. Spellmire, 67 Ohio St., 77; Cincinnati v. Steinkamp, 54 Ohio St., 284; McGill v. State, 34 Ohio St., 228; State, ex rel., v. Bargus, 53 Ohio St., 94.
This law does operate uniformly in every part of the state upon all persons and things in the same condition or category. ' There is a substantial reason for excluding from the operation of this statute those persons, corporations, villages and cities located on the banks of a stream that separates Ohio from another state. It is not an attempt by the general assembly of Ohio to avoid the limitation of this provision of the constitution by a false, or faulty, classification, but on the contrary is a fair and honest effort to legislate for all the people of the state without unjust or arbitrary *40 discrimination in favor of one class to the advantage of another. To compel those persons, corporations, villages and cities bordering upon the Ohio River to refrain from discharging sewage into the Ohio River, while the cities on the opposite banks are so doing would serve no purpose and accomplish no good results. It would be an absurdity to impose useless burdens upon them, and the purposes of the statute would be no nearer accomplished than by excluding them from' the operation of the law. It would be so unjust and arbitrary as to shock the public conscience. The fact that it would be productive of no good results is sufficient reason for the classification, and for exempting them from the provisions 'of this law. The strongest argument that can be made against this classification is that the law divides the people and cities of the state into two classes, distinguishable only by the condition surrounding each. One class is compelled to do and refrain from doing certain things because the doing or refraining from doing will operate to the substantial benefit of all the people of the state. The other class is exempted from doing and refraining to do the same things because their doing or refraining from doing these things would operate 'to nobody’s advantage. It would seem that it would not require a Solomon to determine that this is not an unjust or unfair discrimination, or false or faulty classification, and that notwithstanding this exception the law does operate uniformly as to all persons and things in the same condition or category. Classification is not only proper, but sometimes absolutely necessary in legislation. It is only when *41 there is no substantial reason for the classification when it clearly appears that there is no real difference existing and that classification has been resorted to by the general assembly merely for the purpose of avoiding and escaping the constitutional limitation that a court will declare a statute unconstitutional for this reason.
The only other question in the record is the one arising upon the demurrer to the third cause of action. Counsel have not discussed this question in either of the printed briefs filed in this cause, yet it is referred to in the brief filed by the defendant in error. In this third cause of action the further question is sought to be raised as to abuse of discretion on the part of the State Board of Health, and as to the insufficiency of its findings to warrant the orders made. It avers all the facts hereinbefore recited and further avers that the findings are insufficient to warrant the orders made; that the outlet of the city sewers into Green-ville Creek does not create the conditions, but only contributes to the conditions found by the State Board of Health, and that this outlet into said creek does not create a public nuisance detrimental to health or comfort; that the' application of the funds of the city to the construction and maintenance of a purification plant would be wrongful, unnecessary and an abuse of corporate powers to the great and irreparable loss, damage and injury to the city, its residents and taxpayers, for which neither have an adequate remedy at law. There is, however, no averment in this cause of action, nor in any part of the petition, that the city authorities have availed themselves of the remedy *42 by appeal provided by the statute itself, and, therefore, it is apparent that the city has not exhausted its legal remedy, and at this point in the proceedings a court of equity would not be justified in interfering. Really the sole question in this record is the question of the constitutionality of this act, for if this act is constitutional it is evident that so long as it affords a further remedy, of which the plaintiff below has not availed itself, then a court of equity must deny relief, until all legal remedies are exhausted, and will not inquire whether a board or officer clothed with discretion in determining the matter at issue has abused this discretion or exercised it fraudulently and corruptly, for resort to the remedy provided by the statute might make such inquiry entirely unnecessary and useless.
The judgment of the circuit court is reversed for error in overruling the defendant’s demurrer to the amended petition and this cause is remanded to the circuit court of Darke county with directions to sustain this demurrer.

Judgment reversed.

Davis, C. J., Spear, Shauck and Johnson, JJ., concur.