## WEST JERSEY AND SEASHORE RAILROAD COMPANY

*v.*

## MAYOR AND COMMON COUNCIL OF WOODBURY et al.

[Submitted September 18th, 1912.   Determined October 4th, 1912.]

1. The ninth section of the complainant railroad company's charter (*P. L. 1853 p. 39*) providing "that it shall be the duty of the said company to construct and keep in repair good and sufficient bridges and passages over or under the said railroad where any public road shall intersect and cross the same, so that the passage of carriages, horses and cattle along the said road shall not be obstructed, and likewise when said railroad shall intersect farms or lands of any individual, to provide and keep in repair suitable and convenient wagon ways over or under said road," relates to public roads which existed at the time the complainant's railroad was constructed, and does include highways opened at a subsequent time.

2. With the charter provision above quoted understood as contemplating only such public roads as were then in existence when complainant's railroad was constructed, the provisions of section 26 of the General Railroad act of 1903 (*P. L. 1903 p. 659*) are also without application.

3. Evidence considered and—*Held*, not to justify a finding that a lane which existed prior to the construction of complainant's railroad where the bridge in question stands was a public road, or that any statute imposes upon the railroad company the duty of maintenance of said bridge.

4. Notwithstanding the fact that complainant railroad company owes no duty to maintain the bridge in question, a bill seeking mandatory relief compelling either the city or county, parties defendant, to strengthen the same to the end that it may be made of sufficient strength to support the traffic liable to pass over it, is not maintainable, the duty in that behalf being enforceable in a court of law.

----

Final hearing on pleadings and proofs.

*Messrs. Gaskill & Gaskill,* for the complainant.

*Mr. Francis B. Davis,* for the city of Woodbury.

*Mr. John Boyd Avis,* for the county of Gloucester.

LEAMING, V. C.

The ninth section of the Charter act under which complainant railroad company is operating (*P. L. 1853 p. 39*) provides:

"That it shall be the duty of the said company to construct and keep in repair, good and sufficient bridges or passages over or under the said railroad where any public road shall intersect and cross the same, so that the passage of carriages, horses and cattle along the said road shall not be obstructed, and likewise when said railroad shall intersect any farm or lands of any individual, to provide and keep in repair suitable and convenient wagon ways over or under said road."

Under the theory upon which this suit has been submitted the primary question for present consideration is whether that section relates alone to public roads which existed at the time the railroad of complainant was constructed or whether it includes public highways opened at a subsequent time.

I am unable to reach the conclusion that this can be regarded in this court as an open question. In *Morris Canal and Banking Co.* v. *State, 24 N. J. Law (4 Zab.) 62*, a somewhat similar provision contained in the Charter act of the canal company was treated as a legislative provision contemplating a work about to be constructed and imposing upon the company no duty in relation to highways laid out across the canal after it should be constructed. In the subsequent case of *Morris and Essex Railroad Co.* v. *Orange, 63 N. J. Law (34 Vr.) 252*, it became necessary for the court to determine what compensation the railroad was entitled to receive as damages arising from laying out a highway across the railroad at grade. The Charter act of that company contained a provision of almost exactly the same terms as the one here in question. Two justices construed the provision as including highways laid across the railroad at any time, and on that ground determined that substantial damages should not be allowed to the company except for injuries not usually incident to the mere crossing of the railroad by a highway. With the provision there under consideration understood as imposing upon the company a statutory duty of maintenance of safe crossings where highways should thereafter be laid out across the railroad, it necessarily followed that no substantial compensation could be exacted by the company for expenses appropriately incident to such maintenance. The failure of the majority of the court to give recognition to the possible existence of such a statutory duty

must, I think, be regarded as a repudiation of the views expressed to that effect in the minority opinion referred to. In a still later case before the same court (*Marino* v. *Central Railroad Co., 69 N. J. Law (40 Vr.) 628*), the latter part of a similar charter provision (that relating to intersected lands) was under consideration and was deemed to relate only to lands intersected by the railroad when the railroad right of way was acquired. With the charter provision above quoted understood as contemplating only such public roads as were then in existence, the provisions of section 26 of the General Railroad act of 1903 (*P. L. 1903 p. 659*) are also without application. Prior to the construction of complainant's railroad a lane appears to have existed at about the point where the bridge in question now stands, but the evidence does not justify a finding that this lane was a public road. I am unable to find justification for the claim that any statute imposes upon the railroad company the duty of maintenance of the bridge in question.

The right of way of the company at the point in controversy was acquired in the year 1854 by deed of conveyance from the owners of the land, and in the conveyance a covenant was inserted whereby the company covenanted with its grantors to erect and maintain a bridge for their benefit over the right of way so conveyed at a point designated in the deed of conveyance. The railroad was soon thereafter constructed and the bridge called for in the deed was erected by the company over the cut made by the railroad at that point. The evidence discloses that at that time a lane existed at or about the point where the bridge was constructed, but, as already stated, a finding that the lane was a public highway or more than a private way is clearly unjustified by the evidence. The bridge referred to appears to have stood until about the year 1875. In the year 1873, the city of Woodbury passed an ordinance providing for the "laying out, opening, widening and extending Hunter street from Broad street to Evergreen avenue." The bridge which had been constructed by the company appears to have been in the line of Hunter street as defined by this ordinance. It is conceded that in the several proceedings taken by the city in laying out Hunter street in conformity to the ordinance referred to complainant company was not a party, and that no proceedings have ever been taken to con-

demu or lay out a public highway across the right of way of the company. October 26th, 1875, the street committee of Woodbury reported to the common council of that city that the bridge at Hunter street had become unsafe for travel across it, and that they had had the street boarded up at that point to prevent accidents. Negotiations were at that time in progress between the city and complainant company looking to the erection of a new bridge; in those negotiations both the city and the company declined to recognize an obligation to build or maintain a new bridge, but the company offered to contribute a specified amount to the cost if the city would assume that burden. These negotiations were continued until March 21st, 1876, on which date the negotiations appear to have been permanently discontinued by reason of the inability of the contending parties to reach any agreement. In 1877 the board of freeholders of Gloucester county built a bridge in the place of the one that had been theretofore built by the company and closed by the city; that bridge was maintained by the county until the year 1885 when the county removed it and built and has since maintained the present structure. By reason of the increased burdens to which bridges are in recent years subjected, the present structure is now admittedly unsafe for the traffic that is liable to use it and must be strengthened or rebuilt. From the foregoing it will be observed that no public highway has at any time been laid out, over or across the railroad of complainant company. It is urged, however, that the long use by the public of the two successive bridges which have been built and maintained by the county has been operative to establish a public highway at the point where the present bridge is located. If that claim be conceded, it is apparent, from what has already been stated, that such public highway came into existence since the railroad of complainant company was constructed. But it will also be observed that the attitude of complainant company has continuously been that it denied liability to accommodate or provide for public travel over or across its line at the point in question, but that it would permit such travel over its line on any suitable overhead structure that the city or county would erect and maintain for that purpose. This attitude of the company, in both of its permissive and conditional aspects, has been clearly defined and understood

during all of the period over which any prescriptive right can be urged. Whether such permissive and conditional use is so destructive of the idea of an adverse or hostile user and inconsistent with the idea of an acquiescence of a nature to carry with it the intention of the company to subject the space spanned by the bridge in question to public use as a highway, it is unnecessary to here determine. See *13 Cyc. 478; Wood* v. *Hurd, 34 N. J. Law (5 Vr.) 87; Riverside* v. *Pennsylvania Railroad Co., 74 N. J. Law (45 Vr.) 476, 479.* It is, however, impossible to adopt a view that leads to the conclusion that the voluntary and permissive assumption of the burden of maintenance of this bridge by the public authorities of Gloucester county, under the circumstances stated, has become operative to impose that burden upon the railroad company.

The bill filed by the railroad company seeks mandatory relief compelling either the city or county to strengthen the bridge in question to the end that it may be made of sufficient strength to support the traffic that is liable to pass over it. It is conceded by all parties to the controversy that the bridge is not now strong enough to sustain heavy loads and a cross-bill filed by the county seeks similar mandatory relief against the railroad company. Notwithstanding the views which I entertain to the effect that the railroad company owes no duty to maintain this bridge, I am still unable to find justification for a decree requiring either the city or county to make the necessary repairs. Any duty that may exist on the part of either the city or county to maintain the bridge in question in a condition safe for travel is purely a public duty to be performed by its proper public officials. Courts of law are clothed with adequate powers for the enforcement of such duties. In cases of that nature, mandatory relief cannot be had in a court of equity. *New York and Greenwood Lake Railroad Co.* v. *Township of Montclair, 47 N. J. Eq. (2 Dick.) 591.*

The only possible element of equitable jurisdiction which I have been able to find in this suit, under the issues as framed, arises from the necessity of immediate protection of the traveling public. That condition, however, has been met by stipulation of the parties.

I am obliged to advise an order denying the relief claimed in both the bill and cross-bill.