## TUSCALOOSA COUNTY v. ALABAMA GREAT SOUTHERN R. CO.
### 6 Div. 345.

Supreme Court of Alabama.
Oct. 5, 1933.

Rehearing Denied Nov. 2, 1933.

Foster, Rice & Foster and J. G. Madison, all of Tuscaloosa, for appellant.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellee.

GARDNER, Justice.

The location of the United States Veterans' Hospital some five miles north of Tuscaloosa increased traffic to such an extent, in the opinion of the board of revenue of Tuscaloosa county, as to necessitate a change of location of what is known as the Loop road, a public highway, where it crossed the tracks of the Alabama Great Southern Railroad Company at Box Springs cut. To this end the county instituted condemnation proceedings for the right of way and demanded of the railroad that it construct, at its own expense, a bridge over its tracks where the new road crossed. This the railroad declined to do, and the county proceeded to construct the bridge at a cost of $4,585.31, and institutes this suit to recover the sum so expended from the railroad upon the theory that the duty of such construction rested upon the road.

While plaintiff offered evidence tending to show the inadequacy for present traffic pur-

poses of the old road and bridge over the railroad crossing, yet a new highway was laid out and a new bridge demanded of the defendant and constructed by plaintiff at a different location, all with the intention that the old way would be abandoned. So much is said in answer to citation by appellant of Mobile & Great R. Co. v. Commissioners' Court of Pike County, 97 Ala. 105, 11 So. 732, where was involved section 1581, Code of 1886, the essential provisions of which are embraced in section 7027, Code 1923.

Except, therefore, as showing good reason for the county's action in the premises, the evidence as to the old road can have no material effect upon the legal question presented here, and the case is to be viewed as one disclosing the establishment of a new highway and a new crossing of the railroad.

It is insisted by appellant that the duty of constructing this overhead bridge rested upon the railroad under the principles of the common law, and there are expressions in the case of State ex rel. City of Minneapolis v. St. Paul, Minneapolis & Manitoba Ry. Co., 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. Rep. 581, 8 Ann. Cas. 1047, which sustain this view. But, as suggested by the court in Chicago, R. I. & P. Ry. Co. v. People, 69 Colo. 266, 193 P. 668, the Minnesota case rested in the main upon a construction of the charter provisions of the railroad, and not upon a common-law duty.

We find, upon investigation, that the common-law rule stated by the Massachusetts court in Boston, etc., R. Co. v. Cambridge, 159 Mass. 283, 34 N. E. 382, 383, is sustained by the authorities generally, as follows: "But at common law the crossing of a new way with one already in use must be made with the least possible injury to the old way, and whatever structures are necessary must be erected and maintained at the expense of the party making the new way, and if the old way cannot be crossed without damage the damage must be ascertained and paid."

And the above-noted principle of the common law was stated in reference to the crossing of a railroad with a public highway, and was restated and applied by the following courts under like circumstances: Northern Central Ry. Co. v. Mayor, etc., 46 Md. 425; State v. Wilmington & Weldon R. R. Co., 74 N. C. 143; Chicago, R. I. & P. Ry. Co. v. People, supra; Town of O'Fallon v. Ohio & Miss. Ry. Co., 45 Ill. App. 572; Louisville & N. R. Co. v. Hopkins County, 153 Ky. 718, 156 S. W. 379; City of Albia v. Chicago, B. & Q. Ry. Co., 102 Iowa, 624, 71 N. W. 541; Rock Creek Township v. St. Joseph & G. I. R. Co., 43 Kan. 543, 23 P. 585.

And in 33 Cyc. 285 is the statement of the text, with citation of authorities, that: "In the absence of statute a railroad company cannot be required to construct and maintain crossings where a street or highway is made across its right of way after the construction of the railroad, there being no common law duty on the part of the railroad company in such cases to construct crossings or bridges or approaches thereto." See, also, 51 Corpus Juris, 669, to like effect.

As to the correctness of the statement of the common-law principle made by the Massachusetts court in the Cambridge Case, supra, we find no conflicting decisions, and, indeed, we read the opinion of the Minnesota case as giving recognition thereto, but declining to make it applicable to railroads. The reasoning, however, of that authority would not lead to placing such a duty upon the railroad as one arising from the common law, but merely as refusing to give recognition to the common-law principle as applicable to railroads.

What was said as applicable to the question here presented by the writer of the opinion in City of Birmingham v. Louisville & Nashville R. R. Co., 216 Ala. 178, 112 So. 742, did not meet the approval of a majority of the court, nor was the approval thereof by the writer of the opinion in Gulf, Mobile & N. R. Co. v. Pistole, 218 Ala. 695, 120 So. 159 (likewise the writer here) accepted by the court, and therefore these cases contain no authoritative statement which would lend color to appellant's insistence.

A further study of the Minnesota case, above noted, has persuaded the writer that the statement therein as to any common-law duty upon the railroad was erroneous and unsupported by the authorities and that the cases discussed in the opinion disclose that they rested upon statutory authority and not the common law.

This court has held that if a railroad constructs its road across a public road or highway, the duty (which is a continuous one) devolves upon it to put and keep the approaches and crossings in proper repair for the use of the traveling public, and that this is a common-law burden. Southern Ry. Co. v. Morris, 143 Ala. 628, 42 So. 17. And so it is a common-law burden as to highways in existence when the railroad was constructed, as was the case there considered.

But the authorities herein cited tend to demonstrate that, applying the same common-law principle to a situation where the highway is established after the construction of the railroad, the burden is upon those establishing the new way and not upon the railroad. Indeed, it has been held by some authorities that a railroad cannot constitutionally be so required by statute, without compensation, but the great weight of authority and sound reasoning as well is to the contrary, as pointed out by the Minnesota court in State ex rel. Minneapolis v. St. Paul, M. & M. R. Co., supra, and by the United States Supreme Court in Northern Pacific Ry. Co. v. State of Minnesota ex rel. City of Duluth, 208 U. S. 583, 28 S. Ct. 341, 52 L. Ed. 630. Such

statutes are in the interest of public safety and a proper exercise of the police power, which is continuing in its nature. Northern Pacific Ry. Co. v. State of Minnesota ex rel. City of Duluth, supra.

■ It follows, therefore, as our conclusion, that the duty to construct the overhead bridge in question cannot be rested upon common-law principle. But it is urged that the duty to so construct the bridge may be rested upon the statute (section 7027, Code 1923), and upon the charter provisions of defendant's predecessor as found in Gen. Acts 1853–54, p. 270.

■■ There are authorities to the effect that language of similar import as found in these statutes is properly to be construed as having reference to highways in existence at the time of the construction of the road and not to those subsequently established. West Jersey & Seashore R. R. Co. v. City of Woodbury, 80 N. J. Eq. 412, 84 A. 1047; Chicago, M. & St. P. Ry. Co. v. City of Milwaukee, 97 Wis. 418, 72 N. W. 1118; Railway Co. v. City of Troy, 68 Ohio St. 510, 67 N. E. 1051; State v. Wilmington, etc., R. Co., 74 N. C. 143. And there are other courts that construe similar language as applicable only to grade crossings, and we think this represents the better view and one more in harmony with the legislative intent. City of Albia v. C., B. & Q. Ry. Co., 102 Iowa, 624, 71 N. W. 541, 543; Louisville & N. R. R. Co. v. Hopkins County, 153 Ky. 718, 156 S. W. 379, 381; Chicago, R. I. & P. R. Co. v. People, 69 Colo. 266, 193 P. 668.

■ In construing these provisions it should be observed that under the common law the duty of constructing public bridges devolved upon the county (State v. Wilmington & Weldon R. Co., supra), and the Iowa court in City of Albia v. C., B. & Q. Ry. Co., supra, in so construing a somewhat similar statute, says: "We may well suppose that the legislature, in passing the statute under consideration, had in mind the conflict of authority in reference to the power of the state to compel the construction of bridges over their rights of way in highways which were not in existence at the time of the construction of the railway, and made the act apply simply to grade crossings."

And the Kentucky court in Louisville & N. R. R. Co. v. Hopkins County, supra, states: "Evidently this statute contemplates the crossing of a highway by the railroad track at grade, and not an overhead crossing of great expense, as is required by the judgment in this case. * * * There being no statutory authority sufficient to authorize the county to exercise its police power to the extent here done, the circuit court was in error, and went beyond the scope of the statute in requiring appellant to construct and maintain an overhead bridge, at its own cost."

We are strengthened in our interpretation of these statutory provisions by the policy of the state as disclosed by subsequent legislative enactments. Practically all of the previously existing statutes affecting the matter of construction and maintenance of public highways and bridges are to be found embraced in Gen. Acts 1927, p. 348 et seq. The history of these various statutes need not be here detailed. Among the previous statutes so included was that of Gen. Acts 1915, p. 573, granting broad powers to the courts of county commissioners or boards of revenue as to the matter of construction and superintendence of the public roads of the county and vesting in such boards, to this end, legislative, judicial, and executive power. Section 1347, Code 1923; Gen. Acts 1927, p. 391, § 157. Another statute embraced in the act of 1927 (Gen. Acts 1927, p. 406, § 221) was that contained in section 2070, Code 1923 (section 1296, Code 1907) granting to the governing body of cities of more than thirty-five thousand the power to require railroad companies to construct and maintain, within the city limits, viaducts, bridges, and tunnels, and granting to the railroad a judicial review of such an order by appeal to any court having equity jurisdiction (City of Birmingham v. L. & N. R. R. Co., 213 Ala. 92, 104 So. 258), and the statute was construed as not justifying an ordinance beyond the plain import of its language. City of Birmingham v. L. & N. R. R. Co., 216 Ala. 178, 112 So. 742.

And in section 43 of General Acts 1927, on page 361, the state highway commission, under certain specified conditions, is authorized to require all steam railways operating in this state to construct viaducts, tunnels, underpasses, or bridges to the full extent of the width of the right of way, when, in the judgment of such commission, a dangerous grade crossing is eliminated. But it is specifically provided in the act that the said railway shall not be required to pay exceeding 50 per cent. of the cost thereof. These statutes containing such detail provisions for the erection of bridges and viaducts in cities of more than thirty-five thousand population and on highways where state funds are expended, clearly indicate that the Legislature did not interpret any existing statute as granting such authority, but that additional legislation was required to that end.

It was a grant of power and there is nothing in these statutes indicating in the least, as argued by appellant, that these provisions constitute but a limitation of power previously existing. Like observations are made by the Iowa court in City of Albia v. C., B. & Q. R. Co., supra, and a like conclusion drawn therefrom; and the opinion of the majority in City of Birmingham v. L. & N. R. R. Co., 216 Ala. 178, 112 So. 742, discloses that the case turned upon the matter of city authority "properly delegated by the legislature."

432

A county is but a governmental agency possessing no power and subject to no duty not originating from the law by which it is created, and in which its functions are defined. Whatever of power may be delegated to the county is the power of the state, and its nature is not changed by the delegation. State v. Butler, 225 Ala. 191, 142 So. 531; Askew v. Hale County, 54 Ala. 639, 25 Am. Rep. 730. A county has no inherent jurisdiction to make laws (Hill v. Moody, 207 Ala. 325, 93 So. 422, 423), and we do not think that the broad language of the statute as to the legislative, judicial, and executive power of the courts of county commissioners and boards of revenue concerning the construction of and superintendence over the public roads of the respective counties can be properly construed as justifying the order entered by the board of revenue in the instant case creating a liability and enforcing a duty that did not previously exist, and as to which the lawmakers in the same act have legislated with some detail and certain restrictions.

Appellant places much stress upon the Minnesota case of State ex rel. Minneapolis v. St. Paul, etc., Ry. Co., above cited, and in which the court dealt with charter provisions somewhat similar to those of defendant's predecessor. We have previously noted our disagreement with that opinion as to the duty upon the railroads in a case of this character under the common law, and it appears in the discussion that this erroneous assumption that such was the common-law duty underlies the whole opinion and affected the judgment of the court as to the construction of the charter provision there considered. Nor did the Minnesota court have for consideration legislation on the subject as last herein discussed.

Other authorities cited by appellant (among them Cincinnati, Indiana & W. Ry. Co. v. City of Connersville, 218 U. S. 336, 31 S. Ct. 93, 54 L. Ed. 1060, 20 Ann. Cas. 1206; Cooke v. Boston & L. R. Corp., 133 Mass. 185, 188; Lake Erie & W. R. Co. v. Cluggish, 143 Ind. 347, 42 N. E. 743) have been considered, but we do not find they militate against the conclusion here reached.

The language stressed by appellant as from City of Birmingham v. L. & N. R. R. Co., supra, was not the language of the court, as the conclusion of the justice to whom the case was originally assigned was not accepted by the majority, but their views were expressed in a separate opinion. This was also the case in Gulf, Mobile & Northern R. R. Co. v. Pistole, 218 Ala. 695, 120 So. 159. But the writer here, who also wrote the unaccepted discussion in the Pistole Case, supra, may, with due propriety, add that what was therein stated as applicable to the matter of crossings was said in the light of the case presented, that is, of a grade crossing only, and to be properly construed should be so confined.

We are of the opinion the learned trial judge reached the correct conclusion of law upon consideration of the motion for a new trial, and that his order granting the same should be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.